**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Delaney Deron HOLMES,**
**Defendant–Appellant.**

No. 94–5546.

United States Court of Appeals,
Fourth Circuit.

Argued May 5, 1995.

Decided Aug. 4, 1995.

---

**ARGUED:** John Herman Hare, Federal Public Defender's Office, Columbia, SC, for appellant. William Earl Day, II, Asst. U.S. Atty., Florence, SC, for appellee. **ON BRIEF:** Parks N. Small, Federal Public Defender, Columbia, SC, for appellant. J. Preston Strom, Jr., U.S. Atty., Florence, SC, for appellee.

Before HALL, WILKINS, and WILLIAMS, Circuit Judges.

Affirmed by published opinion. Judge HALL wrote the opinion, in which Judge WILKINS and Judge WILLIAMS joined.

## OPINION

K.K. HALL, Circuit Judge:

In this appeal of a sentence imposed on a mail fraud conviction, we are called on once again to decide whether the district court properly enhanced the defendant's offense level pursuant to USSG § 3A1.1, based on a finding that certain victims of the fraud were particularly susceptible to being bilked. We hold that the court correctly applied the Guideline, and we affirm.

### I.

From five offices located throughout northeastern South Carolina, Delaney Holmes operated two businesses known as the Minority and Christian Federal Mortgage Co., Inc., (MCFMC) and the JADAS[1] Commission. Holmes, who is black, collected fees and escrow funds from his customers, virtually all of whom were black persons with poor credit, ostensibly for the purpose of obtaining mortgage loans. Between 1990 and 1994, seventy-eight people raided their children's tuition savings, borrowed money from elderly family members, dipped into their retirement plans, and sold their cars to give more than $150,-000 to Holmes. Only a few of Holmes's clients actually received loans; the vast majority never even had their applications processed.

Holmes was indicted, and, on May 3, 1994, he pled guilty to a single count of mail fraud; in exchange, the government dismissed nine other counts. The district court determined Holmes's base offense level to be 6, to which six levels were added because of the amount of the loss. *See* USSG § 2F1.1. The court added another two levels for "more than minimal planning" (§ 2F1.1(b)(2)(A)), two for "abuse of a position of trust" (§ 3B1.3), and two for "vulnerable victim," pursuant to USSG § 3A1.1. Three levels were subtracted for acceptance of responsibility (§ 3E1.1(b)). The resultant offense level of 15, in light of Holmes's lack of a criminal record, produced a sentencing range of 18–24

---

1. JADAS is an acronym for *Jesus Against Drugs, Alcohol, and Suicide.*

months. The district court sentenced Holmes to the maximum. Holmes appeals.

## II.

The "vulnerable victim" adjustment of USSG § 3A1.1 provides that the defendant's offense level shall be increased by two if he or she "knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, *or that a victim was otherwise particularly susceptible to the criminal conduct. . . .*" (emphasis supplied). The primary question on appeal is whether certain of Holmes's victims were "particularly susceptible" to his scheme.

## A.

 We have devised a two-part test to determine whether a victim is particularly susceptible. *See United States v. Singh,* 54 F.3d 1182, 1191 (4th Cir.1995). Not only must the victim be, as the language of the Guideline suggests, "unusually vulnerable," [2] but the victim must also have been targeted by the defendant *because* of the victim's unusual vulnerability. *Singh,* 54 F.3d at 1191; *see also United States v. Gary,* 18 F.3d 1123, 1128 (4th Cir.) (for enhancement to apply, the defendant must have "initially chosen" the victim because of the latter's unusual vulnerability), *cert. denied,* —— U.S. ——, 115 S.Ct. 134, 130 L.Ed.2d 77 (1994).

Hence, we have held that victims of fraudulent solicitations for donations to assist others in the community harmed by a tornado were not unusually vulnerable. *See Wilson,* note 2 *supra,* at 138.[3] Conversely, we affirmed a district court's application of § 3A1.1 upon its finding that a newly arrived immigrant from the former Eastern Bloc—unaccustomed to living in a country where law enforcement officials are the people's servants rather than their masters—was unusually vulnerable to an extortion scheme insofar as he was reluctant to summon the help of the police. *United States v. Bengali,* 11 F.3d 1207, 1212 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1853, 128 L.Ed.2d 477 (1994).

Our most specific application of the second part of the test—the targeting requirement—occurred in *Gary.* In that case, the district court found that the defendant's history of threatening conduct toward an ex-girlfriend rendered her so mentally and emotionally weakened that she became unusually vulnerable to his continued harassment. We nevertheless held that § 3A1.1 was inapposite, as it was plain that the defendant had begun threatening his former lover because she had ended their relationship, and not because she was especially vulnerable to being threatened.

## B.

 We have no difficulty concluding that the district court properly applied § 3A1.1 in the instant case. Two of Holmes's victims testified that they went to MCFMC because they had bad credit and had been unable to obtain mortgage loans elsewhere. Holmes himself admitted that he sought to draw poor credit risks to his "business":

Q. Isn't it true that most of the consumer borrowers who came in to see you came in because they had credit problems and they couldn't get loans anywhere else?

A. A great percentage of the clients did come in because they had credit problems, correct.

Q. As a matter of fact, that's the type of people you were advertising for or specializing in that area, isn't that correct? You advertise in phone books and the radio and by newspapers for people with bad credit or foreclosure?

A. For the simple reason, sir, that no other institution within the state was making an attempt to assist those clients. That's correct.

---

**2.** *See id.; see also United States v. Wilson,* 913 F.2d 136, 138 (4th Cir.1990) ("The vulnerability that triggers § 3A1.1 must be an unusual vulnerability which is present in only some victims of that type of crime.") (internal quotation marks and citation omitted).

**3.** In *Wilson,* there was no showing that any of the randomly selected victims were more susceptible to the bogus scheme than most persons asked to provide donations for disaster relief.

Q. So with your ads, you were expecting people who were having trouble getting loans elsewhere. That's who you were holding yourself out as the people you would help?

A. That we were able to provide loans. That's correct.

It is manifest that persons with poor credit ratings who have been turned down elsewhere for loans would be unusually vulnerable, that is, more prone than most to yield to the melodious beseeching of a charlatan who assures them that their dreams are within their grasp. Holmes targeted such dreamers, as his admissions vividly illustrate; it was not clearly erroneous for the district court to infer that Holmes targeted them precisely because they dared to believe that, despite their travails of late, their dreams might come true.[4]

### III.

 Holmes contends that the district court sentenced him at the top of the applicable Guideline range because his victims were black. Although the district court has almost limitless discretion to sentence a defendant within the prescribed Guideline range, *see United States v. Jones,* 18 F.3d 1145, 1151 (4th Cir.1994); *United States v. Porter,* 909 F.2d 789, 794–95 (4th Cir.1990), a sentence based on an unconstitutional classification is one "imposed in violation of law," 18 U.S.C.A. § 3742(a)(1) (West 1995), and is therefore reviewable. *Jones* at 1151.

■ In the instant case, the district court was indeed bothered by Holmes's tactics in defrauding his victims:

It is a disturbing crime. It's obviously made more disturbing because of the particular relationship that this defendant attempted to create with his clientele. He appealed to, I think, a racial minority....

[T]hough I don't use that for the enhancement purposes under [the vulnerable victim provision] ..., I think it does show a part of his crime that makes it more despicable and more distasteful than your normal fraud.

The above-quoted language in no way demonstrates that the district court sentenced Holmes to the maximum "because his victims were black." The court's soliloquy is merely a decrial of Holmes's attempt to gain his victims' trust by making appeals based on race—*any* race. The district court evidently (and quite understandably) despised such tactics, and it is apparent that it made no difference whether Holmes and his victims were black, white, or green. Moreover, the factors that actually motivated the court's decision are explicitly detailed in the record:

The consumer affairs division of the State of South Carolina called [Holmes] on the carpet and tried to get his act in line. He hired an attorney and went up there and got them off his back. That's all he did. And turned right around and continued to do the same thing again. And he'd be doing it now if it wasn't for the FBI coming in and taking the matter in hand and pursuing his prosecution.... I think that he's entitled to receive a sentence at the very top of the Guideline. If he were able to make restitution, that may mediate his sentence to some extent. But he's not. He has no intention of doing it. And I think that the best thing we can do in this case is to put him away for as long as the Guidelines permit.

The district court had the discretion to do exactly that; Holmes's sentence is affirmed.

*AFFIRMED.*

---

4. *Accord, United States v. Peters,* 962 F.2d 1410 (9th Cir.1992). In *Peters,* the court of appeals affirmed the district court's application of the vulnerable victim enhancement where the defendants sent fraudulent letters to persons with poor credit records, promising them a "preapproved" MasterCard for a $35 "membership fee." The court stated that the defendants "knew or should have known that individuals with poor credit backgrounds were more likely than others to

succumb to the solicitation and were particularly susceptible to the scam. That, in fact, is precisely why [they] targeted the solicitation at these individuals." *Id.* at 1418.

The reasoning in *Peters* appears to apply—in spades—to this case. In any event, we are certain that the minimum requirement that the victim's vulnerability must "play a role" in the defendant's targeting decision, *see Singh,* 54 F.3d at 1191, is met here.