**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                      No. 95-5545

DONALD RAY LLOYD,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(CR-95-3-BO)

Argued: September 27, 1996

Decided: October 18, 1996

Before WILKINS, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Edwin Chrisco Walker, Assistant Federal Public
Defender, Raleigh, North Carolina, for Appellant. William Arthur
Webb, Assistant United States Attorney, Raleigh, North Carolina, for
Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attor-
ney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

On March 6, 1995, Donald Ray Lloyd pled guilty to the charge of armed bank robbery in violation of 18 U.S.C.A. §§ 2113(a) and 2113(d) (West Supp. 1996). The district court sentenced Lloyd to a term of 96 months incarceration, a 60 month period of supervised release, and a special assessment of $50.00. On appeal, Lloyd contends that the district court erred in applying a two-level vulnerable victim enhancement. See United States Sentencing Commission, Guidelines Manual, § 3A1.1(b) (Nov. 1995). He claims that the evidence was insufficient to support the district court's finding that he specifically targeted the victim because of her vulnerability. We conclude that the district court did not err when it increased Lloyd's base offense level under U.S.S.G. § 3A1.1(b). As a result, we affirm Lloyd's sentence.

I.

On November 2, 1994, Lloyd robbed the Centura Bank in Rocky Mount, North Carolina. Armed with a knife, Lloyd entered the bank and presented a robbery note to 78-year-old teller Obie Cressman. He then pulled Ms. Cressman's head down to the counter, threatening her with the knife and tearing off her necklace in the process. He announced that he would kill Ms. Cressman if he was not given what he wanted and ordered another teller to put money in a bag. Amy Keel, one of the other tellers, put $3,996 in a bag and placed it on the counter. Lloyd grabbed the money and ran from the bank. He was arrested later that day.

Lloyd had not been in the Rocky Mount Centura Bank prior to the robbery, nor had he previously surveilled the bank. Only the bank manager, two tellers aged 27 and 31, and Ms. Cressman were present in the bank when Lloyd arrived. After the robbery, the bank manager

2

and the tellers indicated that they had been terrorized by the robbery. Ms. Cressman stated that she was "scared to death" and has "become leery of anyone who approaches her teller counter."

On January 17, 1995, a grand jury sitting in the Eastern District of North Carolina indicted Lloyd on one count of armed bank robbery in violation of 18 U.S.C.A. §§ 2113(a) and 2113(d). On March 6, 1995, Lloyd pled guilty to the charge. At the sentencing hearing, the district court initially determined a base offense level of 22 based on the robbery (+20), the amount of money stolen (+2), the use of a dangerous weapon (+3), and Lloyd's acceptance of responsibility (-3). In agreement with the Government's objection to the pre-sentence report, the district court also found that Lloyd had preyed upon an unusually vulnerable victim when he assaulted Ms. Cressman. Consequently, the court upwardly adjusted the offense level another two levels under U.S.S.G. § 3A1.1(b) (Vulnerable Victim), resulting in a base offense level of 24. This new calculation, combined with criminal history category IV, gave Lloyd a guideline range of 77-96 months. Accordingly, the district court sentenced him to imprisonment for 96 months, with a supervised release of 60 months and a special assessment of $50.00. Lloyd appeals his sentence.

II.

Section 3A1.1(b) of the Sentencing Guidelines requires district courts to upwardly adjust offense levels by two levels "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b) (emphasis supplied). Lloyd maintains that the evidence failed to show that he selected his victim because of her vulnerability. Applying the statutory command to give "due deference" to a district court's application of the Sentencing Guidelines, we review factual determinations for clear error and legal questions de novo. See United States v. Blake, 81 F.3d 498, 503 (4th Cir. 1996); United States v. Singh, 54 F.3d 1182, 1190 (4th Cir. 1995). Upon review, we hold that the district court's findings are sufficient to establish that Lloyd specifically targeted Ms. Cressman. We therefore affirm the sentencing order of the district court.

3

To apply § 3A1.1(b), a district court must make two findings. See United States v. Holmes, 60 F.3d 1134, 1136 (4th Cir. 1995) (outlining two-part test); Singh, 54 F.3d at 1191 (same). First, the court must find that the victim was, as the language of the Guideline suggests, "unusually vulnerable." See U.S.S.G.§ 3A1.1(b); Holmes, 60 F.3d at 1136; Singh, 54 F.3d at 1191; see also United States v. Wilson, 913 F.2d 136, 138 (4th Cir. 1990) ("The vulnerability that triggers § 3A1.1 must be an unusual vulnerability which is present in only some victims . . . .") (internal quotation marks and citation omitted). In other words, in a proper § 3A1.1(b) enhancement, the district court must find that because of age, mental or physical condition, or any other relevant deficit, the victim was "more susceptible to abuse from a perpetrator than most other potential victims of the particular offense." Singh, 54 F.3d at 1191-92.

Second, the district court must find that the defendant "targeted" the victim because of the victim's unusual vulnerability. See Holmes, 60 F.3d at 1136; Singh, 54 F.3d at 1191; see also United States v. Gary, 18 F.3d 1123, 1128 (4th Cir.) (for enhancement to apply, the defendant must have "initially chosen" the victim because of the victim's unusual vulnerability), cert. denied, 115 S. Ct. 134 (1994). "At the very least, the victim's vulnerability must play a role in the defendant's decision to select that victim as the target of the crime." Singh, 54 F.3d at 1191 & n.5 (citing cases).

Thus, under this two-part test, "the district court must first look to the victim to determine whether this particular victim was more vulnerable to the offense than the world of possible victims. Then, the court must determine whether the defendant specifically targeted the victim because of that vulnerability." Singh , 54 F.3d at 1192. If these conditions are satisfied, then the district court should increase the base offense level two levels under §3A1.1(b).

Lloyd does not claim that Ms. Cressman was not "unusually vulnerable."**1** Instead, he contends that the district court's finding that
_____

**1** Indeed, such an argument would likely fail because the Sentencing Guidelines expressly recognize age as an indicator of vulnerability. See U.S.S.G. § 3A1.1(b) (listing nonexclusively age, physical condition, and mental condition as indicators of susceptibility to criminal conduct).

4

he targeted Ms. Cressman because of her vulnerability was clearly erroneous. (Appellant's Br. at 7-8.) He argues that the district court should have examined the facts broadly and inferred that, because Lloyd had never before been in the bank, he selected the bank with no knowledge of the age of the tellers. See id. In essence, he claims that because he chose the bank randomly, Ms. Cressman could not have been specifically targeted.**2**

Despite Lloyd's contentions, we have no difficulty concluding that the district court properly applied § 3A1.1(b) in the instant case. Ms. Cressman was 78 years old at the time of the robbery. (J.A. at 43.) Three other people, all less vulnerable than Ms. Cressman, were in the bank when Lloyd arrived. (J.A. at 43-44.) Lloyd himself admitted that given a choice between the two young tellers, the bank manager, and Ms. Cressman, he chose to accost "the older white teller." (J.A. at 53.) Based on this evidence, the district court found that Lloyd chose specifically to act against Ms. Cressman because of her"particular characteristics of age and therefore vulnerability." (J.A. at 44.)

Common sense dictates that an aged and delicate bank teller would be more susceptible -- i.e., unusually vulnerable -- to Lloyd's strong-arm tactics than younger, less fragile, bank employees. As his admission illustrates, Lloyd specifically selected the "older" Ms. Cressman to present with the robbery note. Common sense also dictates that because Lloyd had a choice among young and old tellers, and because he chose to assault the older teller, he specifically targeted Ms. Cressman because of her vulnerability. Thus, the district court's finding that Lloyd targeted her because of her "particular characteristics of age and therefore vulnerability," (J.A. at 44), was not clearly erroneous. See Blake, 81 F.3d at 504 (holding that district court "was not clearly erroneous in finding that[the defendant's] vic-

_____

**2** Implicit in Lloyd's argument is the contention that the bank, and not Ms. Cressman, was the victim of the robbery. However, we have recently held that the "victim of the offense" for vulnerable-victim sentencing purposes may be a person who was not a victim of the particular offense of conviction. See United States v. Blake, 81 F.3d 498, 503-04 (4th Cir. 1996) (holding that persons from whom the defendant stole credit cards were victims of the offense of fraudulent use of an unauthorized access device).

5

tims were unusually vulnerable because of their age and that [the defendant] targeted them due to this vulnerability"). The sentence imposed by the district court is therefore affirmed.

AFFIRMED

6