**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Paul J. GRIMES, Defendant–Appellant.**

No. 98–1828.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1999.

Decided April 19, 1999.

Valerie Turner (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

Joshua Sachs (argued), Sachs & Drake, Morton Grove, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.

POSNER, Chief Judge.

The defendant, Paul Grimes, was convicted of violating 18 U.S.C. §§ 1341 (mail fraud) and 1342 (use of false name or address in connection with mail fraud), and was sentenced to 63 months in prison, fined $125,000, and ordered to pay restitution to his victims of $500,000. His appeal presents three issues. The first is whether the district judge erred in refusing to order a psychiatric evaluation. Grimes had pleaded guilty, and was awaiting sentencing, when he jettisoned the lawyer who had negotiated the plea agreement and moved to set aside his guilty plea. The district judge appointed a new lawyer for him, who asked the judge to order a psychiatric evaluation on the grounds that Grimes was seeing a psychiatrist and taking an antidepressant drug for depression and that he appeared to be "somewhat paranoid" about his lawyers and to have an "attention deficit disorder." The judge turned down the motion, remarking that "whatever psychological problems [Grimes] has are indeed [as the government had argued in opposing the motion] shared by a significant percentage of the population, and the manifestation[s] of those problems in his case do not appear to be particularly severe." The judge concluded that having had a chance to observe Grimes in action (notably when the judge accepted the guilty plea), he was satisfied that Grimes "understands the proceedings."

An evidentiary hearing on a defendant's competence to participate in the proceedings against him is required if there is "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his

defense." 18 U.S.C. § 4241(a); *United States v. Graves*, 98 F.3d 258, 261–62 (7th Cir.1996); *United States v. Collins*, 949 F.2d 921, 924 (7th Cir.1991); *United States v. Leggett*, 162 F.3d 237, 241–45 (3d Cir. 1998); *United States v. Sovie*, 122 F.3d 122, 128 (2d Cir.1997). If this standard is satisfied, the district judge may order a psychiatric evaluation of the defendant. 18 U.S.C. § 4241(b); *United States v. O'Neal*, 969 F.2d 512, 514 (7th Cir.1992). In requesting such an evaluation, Grimes's lawyer was in effect requesting an evidentiary hearing.

■ The only proceedings that remained to be conducted in the district court, and so the only proceedings to which such a hearing would be relevant, involved the motion to withdraw the plea of guilty, and, if that was denied, the sentencing hearing. Having engaged in the usual colloquy with Grimes before accepting the plea of guilty, the judge had had an opportunity to make at least a rough assessment of Grimes's capacity to participate in the remaining proceedings. That kind of informal, on the spot assessment is recognized to be an appropriate step toward determining whether there is reasonable cause to conduct an evidentiary hearing—and often it is the only step necessary. *United States v. Graves, supra*, 98 F.3d at 261. But if, as in *Graves*, the defendant's deportment before the judge, or other evidence, indicates that the defendant may be incompetent, a hearing is necessary.

■ We are using "evidence" loosely; the issue is whether evidence must be taken; anything that points to the need for evidence is admissible to help the judge decide whether reasonable cause for an evidentiary hearing exists. *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *United States v. Collins, supra*, 949 F.2d at 924, 927; *United States v. Sovie, supra*, 122 F.3d at 128; *United States v. George*, 85 F.3d 1433, 1438 (9th Cir.1996). Representations by the defendant's lawyer that he has observed crazy or bizarre behavior by his client, or records showing that the defendant has been diagnosed with a severe psychiatric illness, can suffice. *United States v. Renfroe*, 825· F.2d 763, 767 (3d Cir.1987); *United States v. Pellerito*, 878 F.2d 1535, 1545 (1st Cir.1989); *United States v.· Auen*, 846 F.2d 872, 878 (2d Cir.1988). But we do not have anything like that here. As the district judge said, the representations by Grimes's new lawyer showed only that Grimes has the kind of mild psychiatric disturbance that afflicts a substantial fraction of the population. He sees a psychiatrist; he is depressed but taking Prozac, the antidepressant medicine, and so far as appears his depression is under control; he is suspicious of his lawyers (nothing unusual about that!); and he has trouble concentrating. These symptoms fall short of creating reasonable cause for thinking that Grimes was incompetent to follow the proceedings in his case. *Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir.1996); *United States v. Davis*, 61 F.3d 291, 304 (5th Cir.1995). About 18 million Americans suffer from depression and almost 7 million of them are on Prozac. Joannie M. Schrof & Stacey Schultz, "Melancholy Nation: Depression Is on the Rise Despite Prozac. But New Drugs Could Offer Help," *U.S. News & World Report*, March ˋ8, 1999, p. 56; 1999 *World Almanac & Book of Facts* 885 (1999).

Particularly telling is the defendant's failure to substantiate the allegations made in the motion, when this could so easily have been done were there any substance to them. Grimes is seeing a psychiatrist. He is taking antidepressant drugs, which are prescription medicines that must have been prescribed by the psychiatrist or some other physician. Grimes's lawyer could have asked the psychiatrist for a letter or affidavit indicating the nature and severity of Grimes's psychiatric condition. The absence of such a document supports the inference reasonably drawn by the judge from his own observations and from

the motion itself that the defendant's condition is not severe.

█ The appeal also challenges the sentence. The judge decided to enhance Grimes's sentence because his victims were particularly vulnerable to the scheme to defraud. U.S.S.G. § 3A1.1(b). (U.S.S.G. § 3A1.1(b)(2), which prescribes an additional enhancement when there were many vulnerable victims of the defendant's crime, was not yet in effect when Grimes was sentenced.) To evaluate the judge's action we must describe the scheme (actually schemes, if the relevant conduct that was taken into account in sentencing is included, but we can ignore that detail). It belongs to the common fraud genre known as the "advance fee loan" fraud. *United States v. Stafford*, 136 F.3d 1109, 1111 (7th Cir.1998); *United States v. Page*, 69 F.3d 482 (11th Cir.1995); cf. *United States v. Patasnik*, 89 F.3d 63, 66–67 (2d Cir.1996). Grimes placed advertisements in newspapers of general circulation offering unsecured loans of up to $50,000. The advertisement said "Bad credit and bankruptcy okay" and "No collateral, no cosigners." A toll-free number was listed and when a potential applicant called, Grimes or an employee would inform the applicant that he had been pre-approved for a loan and would then send him an application form which repeated that the loan had been approved and directed him to fill in and return the form together with an application fee, usually of $198. Grimes did not make, or arrange for, any loans; he merely pocketed the fees.

The "vulnerable victim" sentencing enhancement is intended to reflect the fact that some potential crime victims have a lower than average ability to protect themselves from the criminal. Because criminals incur reduced risks and costs in victimizing such people, a higher than average punishment is necessary to deter the crimes against them. *United States v. Lallemand*, 989 F.2d 936, 940 (7th Cir. 1993); *United States v. White*, 903 F.2d 457, 463 (7th Cir.1990); *United States v. O'Neil*, 118 F.3d 65, 75 (2d Cir.1997); *United States v. Gill*, 99 F.3d 484, 486 (1st Cir.1996); *United States v. Blake*, 81 F.3d 498, 504 (4th Cir.1996). Fraud illustrates the need for the enhancement, as recognized in *United States v. Page, supra*, 69 F.3d at 489, a case quite like this one; see also *United States v. Holmes*, 60 F.3d 1134, 1137 (4th Cir.1995); *United States v. Peters*, 962 F.2d 1410, 1415–18 (9th Cir. 1992). Defrauders who direct their activities not against banks, insurance companies, or large investors, but instead against people who because of mental or educational deficiencies or financial desperation are suckers for offers of easy money, do not need to take as many precautions against the discovery of their scheme by the intended victims and in any event are less likely to be prosecuted, because the victims are less likely to know that they have been defrauded or if they know to have the know-how and initiative required to press a criminal complaint or bring a civil suit. This describes the intended victims of Grimes's scheme. Only a very unsophisticated person would think that although he had bad credit he could borrow a substantial sum of money without having to put up security or any other guaranty of repayment (such as an accommodation note). Or that the loan would be approved *before* he furnished any evidence of his likely ability to repay it. Only a desperate person, unable to obtain credit by a normal route, would plunk down a nonrefundable $198 for the right just to apply for a loan. Such people are rightly regarded as unusually vulnerable.

Grimes advertised in newspapers of general circulation and therefore had no control over the vulnerability of the persons who responded. But the method by which a fraud is disseminated bears only a contingent relation to a determination of whether the fraud is targeted on the unusually vulnerable. It would be absurd to hold, as Grimes invites us to do, that as long as the defrauder uses a medium ac-

cessible to the nonvulnerable—as long as he does not confine his solicitations to the vulnerable—he is protected from a vulnerable-victim enhancement. Newspapers are read by a wide range of persons, but particular advertisements in a newspaper are often targeted to particular subgroups within the newspaper's readership. The wording of Grimes's advertisement was calculated to "turn off" the sophisticated readers but hit between the eyes the unsophisticated and financially desperate seeker for credit. In radiation treatment the x-ray passes through tissue en route to the particular cells that it is intended to destroy; the cells are not the less targeted for the presence of surrounding tissue. Grimes's advertisement passed through, without effect, the sophisticated readers of the newspapers in which it ran, and hit the unsophisticated, the only people who would find its message alluring. It was targeted advertising. *United States v. Page, supra,* 69 F.3d at 489. It would be a different case if Grimes had confined his advertising to media (*Architectural Digest,* for example) that are highly unlikely to be frequented by people who are especially susceptible to fraudulent appeals.

■ Grimes argues that *all* victims of fraud are vulnerable (and so a vulnerable-victim enhancement would be redundant in any fraud case); if they were not, they would not be victimized. The argument (which we expressly rejected, be it noted, in *United States v. Newman,* 965 F.2d 206, 211 (7th Cir.1992)) is sheerest word play. Of course there is a sense in which anyone who is defrauded must have been vulnerable, in the sense of susceptible, to being defrauded. Who would embark on a scheme to defraud who didn't think there was someone out there who would be vulnerable to his pitch? If fraud victims are by definition vulnerable, there could never be a vulnerable-victim enhancement in a fraud case. Yet we know from the cases, e.g., *id.* at 211–12; *United States v. Patasnik, supra,* 89 F.3d at 72; *United States v. Borst,* 62 F.3d 43, 47 (2d Cir.1995); *United*

*States v. Page, supra; United States v. Holmes, supra,* from the vulnerable-victim guideline itself, § 3A1.1 Application Note 2, and from the logic of the sentencing guidelines and the practical realities of fraud, that there can be a vulnerable-victim enhancement in a fraud case. The range encompassed by the sentencing guideline for fraud, U.S.S.G. § 2F1.1, extends from frauds—and they are numerous—that are directed at insurance companies and other large, sophisticated, and alert enterprises and individuals, representing the least vulnerable victims, to frauds against people with severe mental handicaps or psychiatric disorders, illiterates, children, and recent immigrants with poor command of English. See U.S.S.G. § 2F1.1(b)(7)(B) (financial institutions); *United States v. Castellanos,* 81 F.3d 108, 110 (9th Cir.1996) (non-English speakers); *United States v. Bengali,* 11 F.3d 1207, 1212 (4th Cir.1993) (recent immigrant from Eastern Europe, afraid to call the police); *United States v. Callaway,* 943 F.2d 29, 31 (8th Cir.1991) (blind infant). Frauds at the top of the range are harder to pull off and it is there that we would like defrauders to concentrate their efforts—beating their heads against a stone wall most of the time. Frauds at the bottom of the range are easier to pull off and less likely to be detected and punished, and so we want a higher than average punishment for these defrauders, and the vulnerable-victim enhancement gives it to us. Grimes's intended victims, though not at the very bottom of the range, were well below average in their ability to protect themselves against being defrauded and no more is needed to justify the enhancement.

■ The last issue relates to the amount of restitution that the judge ordered, $500,000. Grimes admitted to having defrauded thousands of persons, and we do not understand him to be contending that $500,000 is an extravagant estimate of the total losses that the victims incurred, the total being the number of victims multiplied by the average size of

the application fee charged them. His quarrel with the $500,000 figure is based on the provision of the Mandatory Victims Restitution Act that requires that "in each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). At the time of sentencing, neither the government nor the probation service had compiled a complete list of the victims of Grimes's fraud. The government had tracked down and either interviewed or corresponded with 102 of the victims and had ascertained the amount of the application fee. These victims, together with names of others obtained from deposit slips for Grimes's various bank accounts, and the amounts due them, were duly listed on a sheet which the government gave the judge, who appended it to the order of restitution. The total amount due to the listed persons—$345,000—falls short of $500,000. Grimes argues that the statute does not authorize an order of restitution that does not make each victim whole.

That is what the statute says, all right, but the intended beneficiaries are the victims, not the victimizers. The victim is entitled to an order directing restitution to him of his full loss, regardless of the defendant's present or even likely future circumstances, *United States v. Newman*, 144 F.3d 531, 537 (7th Cir.1998); *United States v. Dubose*, 146 F.3d 1141, 1143 (9th Cir. 1998), for the defendant might someday unexpectedly inherit money, win the lottery, or otherwise strike it rich. The criminal has no rights under the quoted provision. If the district judge violated it by failing to name some of the victims in the order of restitution, he has wronged the victims, not Grimes. Grimes cites other subsections of § 3664 as well, but they too confer rights on victims, not on criminals.

 Neither he nor the government cites the actually relevant provisions of the Mandatory Victims Restitution Act. Section 3663A(c)(3)(A) provides that restitution is not required if the court finds that "the number of identifiable victims is so large as to make restitution impracticable." See also U.S.S.G. § 5E1.1(b)(2); *United States v. Dubose, supra*, 146 F.3d at 1143 and n. 3. The present case may be one in which so many of the defendant's victims are unidentifiable that full restitution is impossible. But it could not have been the intention behind the provision just quoted to bar restitution to those victims who are identifiable merely because others are not. This is where the second relevant provision not discussed by the parties, 18 U.S.C. § 3664(d)(5), kicks in. It provides that if the victims' losses are not ascertainable by 10 days before the defendant is sentenced, the judge shall defer the entry of the order of restitution till up to 90 days after imposing the rest of the sentence. (The statute also allows later-discovered losses to be recovered by entry of an amended order of restitution, if they could not have been discovered earlier.) The judge didn't follow that procedure here, even though this is a case in which at the time of (prison) sentencing so many victims remained unidentified who might within the 90–day period have become identified and submitted claims that a final order of restitution could not yet be entered.

The judge's order contains a reasonable, indeed conservative, estimate of the total loss caused by the defendant's crime, but it does not order that the total loss be distributed among the victims, for the compelling reason that only a fraction of the victims have been identified. We can imagine a statutory scheme in which the order of restitution is based on the total loss, and if the loss exceeds the ascertainable loss to identifiable victims the surplus either escheats to the government or is returned to the criminal or is held indefinitely against the chance that victims who are at present unidentified may eventually come forward. For good or ill, that is not the statutory scheme we have (except for

**640**

certain drug crimes, see U.S.S.G. § 5E1.1(d)). The statute limits the order of restitution to the sum of losses to identifiable victims—an important consideration, incidentally, to our determination in *United States v. Newman* that retroactive application of the statute does not violate the ex post facto clause of the Constitution because the statute is compensatory in nature and therefore not penal (only penal statutes are subject to the clause). 144 F.3d at 541–42; see also *United States v. Szarwark*, 168 F.3d 993, 998 (7th Cir.1999); *United States v. Nichols*, 169 F.3d 1255 (10th Cir.1999). (Most circuits, however, disagree with *Newman*. See *United States v. Edwards*, 162 F.3d 87, 89–90 (3d Cir.1998) (collecting cases).) The 90–day period for deferral of the order and the provision for amendment later are the chosen method of dealing with the problem of unascertained victims. The district judge should have deferred the entry of the restitution order for 90 days and then limited the order to the amounts lost by all victims identified within that period. He exceeded his authority.

The order of restitution must therefore be vacated, and the case remanded to the district court for compliance with § 3664(d)(5). To give the victims the benefit of the 90–day period, which runs from the date of sentencing, we direct the district judge to resentence the defendant.

In all other respects the judgment is affirmed.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.