**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                No. 00-4150

GRANT VENEY LEE,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-99-43-A)

Submitted: August 31, 2000

Decided: September 26, 2000

Before WILKINS, WILLIAMS, and TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Samuel J. Buffone, William M. Carter, Jr., ROPES & GRAY, Wash-
ington, D.C., for Appellant. Helen F. Fahey, United States Attorney,
Robert A. Spencer, Assistant United States Attorney, Alexandria, Vir-
ginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Grant V. Lee was convicted by a jury of aggravated sexual abuse, 18 U.S.C.A. § 2241(a)(1) (West 1984 & Supp. 2000), and sentenced to 210 months imprisonment. He appeals, claiming that: (1) the district court plainly erred in permitting an expert witness to testify regarding the victim's credibility; (2) the evidence was insufficient to establish that he used force; (3) the district court abused its discretion in excluding evidence of the victim's past sexual experience with someone other than Lee; (4) the district court erred in taking judicial notice that Fort Belvoir is within the special maritime and territorial jurisdiction of the United States; and (5) the district court clearly erred in applying the "vulnerable victim" enhancement, U.S. Sentencing Guidelines Manual, § 3A1.1 (1998). Finding no error, we affirm.*

The evidence, viewed in the light most favorable to the government, see United States v. Burgos, 94 F.3d 849, 854 (4th Cir. 1996) (en banc), established the following. Lee and the victim ("LL") worked for "The Chimes," an organization that hires handicapped individuals to clean office buildings. LL is moderately to severely mentally retarded and has cerebral palsy; she also has a severe speech impediment. Lee is not handicapped.

On December 2, 1998, LL reported to her job at the Defense Logistics Agency at Fort Belvoir, Virginia. Between approximately 9:30 am and 10:30 am, Lee told "LL" to "come here," whereupon he took her to the basement of the building to a custodial supply closet. Once there, LL testified that Lee closed and locked the door behind them and then began to touch her breasts. LL told him to "stop it," but Lee continued to pull down LL's pants and to touch her "butt." LL again told Lee to "stop it" as he pulled down her underpants and began to touch her vagina; he than "pulled his penis out .. . [and] put it in [LL's] vagina." According to LL, Lee hurt her a "whole lot," and she attempted to push him away. Lee told LL not to tell anyone what he had done, and the two left the closet together; LL took the elevator back to the second floor (her assigned floor).

_____
*We grant Lee's motion to file a supplemental appendix.

2

Joyce Ryland, Lead Worker at The Chimes, and Karen Ford, The Chimes Project Manager, saw LL get off the elevator on the second floor, looking "stunned" and with her hair out of place. LL told Ford that Lee had told her "to come here" and pointed to her breasts and buttocks, saying "Grant" repeatedly. According to Ford, LL said, "Grant f---d me."

Another supervisor at The Chimes, Sheila Ann Carroll, testified that she saw LL get off the elevator on the fourth floor at approximately 10:15 am and that LL "was upset." LL told Carroll that she (LL) had been downstairs and that Lee had "f---d her." LL took Carroll to the basement and showed her the closet where Lee had assaulted her. Both Ford and Carroll remained with LL for approximately five hours, questioning her repeatedly on the details of the assault. Carroll stated that she had intentionally tried to "trip [LL] up" because she "didn't want to believe the story" but that LL's recitation of the details of the attack remained consistent.

At 5:30 that evening, LL's mother took her to the Dewitt Army Medical Center at Fort Belvoir to be examined. Dr. Michael Halliday, who examined LL that evening, testified that he observed "what looked like abrasions and stretch marks to the sides of LL's vagina." According to Halliday, the "stretched areas . . . looked like the tissue had been stretched rapidly and suddenly . . . . along the walls there appeared to be linear marking that were red, or erythema, and showed signs of recent trauma with a little bit of dark maroon or light brown blood in the vagina." This type of injury, according to Halliday, "occur[s] during too rapid of a child birth where the tissues doesn't [sic] have time to stretch." Halliday stated that, in his opinion, LL's trauma had occurred "less than 12 to up to 24 hours . . . . [p]robably more to the earlier, around 12 hours or so" prior to his examination. No semen was found in or around LL's vagina.

At trial, the government called Dr. Andrew Molchon as an expert witness in psychiatry to testify regarding LL's intellectual capabilities and limitations. According to Dr. Molchon, LL:

> lacks the ability to . . . think in abstract terms .. . . So, you know, she might be able to identify say an orange and a grapefruit, but she would lack the ability to think in terms

3

of citrus fruits . . . . She also has the inability to think sequentially. That if A is true, then B would be true . . . . So I think her reasoning is defective in two ways. Number one, the concreteness of it. And number two, the ability to have a chain of cause and events.

Dr. Molchon was asked a series of questions regarding LL's ability to answer simple versus complex questions and her ability to relate events. In one response, Dr. Molchon stated that LL "would lack that type of ability to put together a credible, cohesive story if it were a falsehood." However, he also conceded that with "persistent" and "systematic" questioning, it would be possible to "plant" a false memory with LL.

Finally, Lee testified and admitted that he asked LL to accompany him to the basement closet and that he tried to kiss her but that LL avoided him. He admitted on cross-examination that he tried to grope LL and that he touched her "butt" and her vaginal area, and also that he touched her breasts. Lee also admitted that he wanted to have sex with LL, but denied having had intercourse with her. The jury convicted Lee of aggravated sexual abuse. He noted a timely appeal.

Lee first claims that the district court improperly allowed Dr. Molchon to testify as to the victim's credibility. Lee failed to object at trial, however, and therefore his claim is reviewed only for plain error pursuant to Fed. R. Crim. P. 52(b), See United States v. Brewer, 1 F.3d 1430, 1434-35 (4th Cir. 1993); United States v. Olano, 507 U.S. 725, 732-37 (1993). We find no plain error in the admission of Dr. Molchon's testimony.

The general rule is that an expert witness may not give an opinion with respect to the defendant's or a witness' credibility. See United States v. Cecil, 836 F.2d 1431, 1441 (4th Cir. 1988). "[A]n expert's opinion that another witness is lying or telling the truth is ordinarily inadmissible pursuant to Rule 702 because the opinion exceeds the scope of the expert's specialized knowledge and therefore merely informs the jury that it should reach a particular conclusion." United States v. Shay, 57 F.3d 126, 131 (1st Cir. 1995). On the other hand, "no constitutional provision, law, or rule requires the exclusion of

4

expert testimony simply because it concerns a credibility question." Id.

Here, Dr. Molchon described LL's mental retardation, reading and writing ability, and conversational limitations. And although Dr. Molchon did state that "she would lack that type of ability to put together a credible, cohesive story if it were a falsehood," he also conceded that it might be possible to falsely convince her that a sexual assault had occurred. Read in context, we find that Dr. Molchon's testimony on direct examination merely defined the limitations of LL's intellectual capabilities and left the ultimate determination as to whether or not she was telling the truth to the jury. Moreover, the district court properly instructed the jury that "[y]ou are the sole judges of the credibility of the witnesses and the weight their testimony deserves." The law presumes that jurors follow their instructions. See Olano, 507 U.S. at 740.

On cross-examination, the following exchange took place:

> Q. Doctor, you have just given an opinion based on whether you believe she is telling the truth with respect to the event that occurred, correct?
>
> A. Whether or not she was lying, yes.

Any error in allowing this testimony was invited by Lee's attorney. As such, he is prohibited by the invited error doctrine from obtaining any relief on this claim. See United States v. Jackson, 124 F.3d 607, 617 (4th Cir. 1997).

Second, Lee claims that there was no evidence of force to support a conviction of aggravated sexual abuse. We find that the government presented sufficient evidence to establish that Lee used "force" within the meaning of the statute. First, LL testified in detail regarding the rape, that Lee shut and locked the door, then forcibly pulled down her pants and underwear and had sexual intercourse with her, all while she was telling him to stop and trying to push him away. See United States v. Allery, 139 F.3d 609, 611 (8th Cir. 1998) (evidence of restraint suffices to prove the element of force under § 2241). In addi-

5

tion, the jury could infer that force was used by Lee based on the medical testimony with respect to the physical trauma LL sustained. Finally, the disparity in intellect and size--Lee is 5'10", LL is 4'11" and weighs 84 pounds--were factors from which a reasonable juror could infer the use of force.

Next, Lee claims that the district court erred by excluding his proffered evidence that DM, a mentally-handicapped co-worker of LL, claimed to have had sex with LL on three occasions some time before December 21, 1998. Federal Rule of Evidence 412 prohibits the admission of evidence of a rape victim's past sexual behavior except in three narrow circumstances: (1) when the evidence is constitutionally required; (2) when it is relevant regarding the source of semen or injury found on the victim; and (3) when it deals with prior sexual behavior between the victim and the accused and is relevant to the issue of consent. Because the evidence failed to meet any of these three exceptions, the district court did not abuse its discretion by excluding this evidence. See United States v. Hassouneh, 199 F.3d 175, 182 (4th Cir. 2000) (stating standard of review).

Lee also claims that the government failed to prove that the rape occurred in an area under federal jurisdiction. The district courts have jurisdiction over offenses committed on military bases. See 18 U.S.C. §§ 7(3), 3231 (1994); United States v. MacDonald, 531 F.2d 196, 198 n.1 (4th Cir. 1976). A district court may take judicial notice that the crime being prosecuted occurred within federal jurisdiction. See United States v. Lavender, 602 F.2d 639, 641 (4th Cir. 1979); United States v. Blunt, 558 F.2d 1245, 1247 (6th Cir. 1977). Here, the indictment charged that the crime occurred at Fort Belvoir, Virginia. Fort Belvoir's location was generally known in the Alexandria Division of the Eastern District of Virginia and verifiable from "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Accordingly, we find no error in the district court's taking judicial notice of this fact.

Finally, Lee challenges the two-level enhancement he received under USSG § 3A1.1(b) for an offense involving an "unusually vulnerable victim." Section 3A1.1(b) applies "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was

6

otherwise particularly susceptible to the criminal conduct." Id. In order to apply this provision, the district court must make two findings: (1) that the victim was unusually vulnerable; and (2) that the defendant targeted the victim because of the victim's unusual vulnerability. See United States v. Singh, 54 F.3d 1182, 1191 (4th Cir. 1995). In other words, the district court must find that because of age, mental or physical condition, or any other relevant deficit, the victim was "more susceptible to abuse from a perpetrator than most other potential victims of the particular offense." Id. at 1191-92. And, the district court must find that the defendant "targeted" the victim because of the victim's unusual vulnerability. See United States v. Holmes, 60 F.3d 1134, 1136 (4th Cir. 1995). "At the very least, the victim's vulnerability must play a role in the defendant's decision to select that victim as the target of the crime." Singh, 54 F.3d at 1191.

As to the first element, LL was clearly "unusually vulnerable" due to both her physical and mental condition. As to the second element, the district court could reasonably infer that LL's physical and mental deficiencies, which were known to Lee, at least played a role in his decision to select her as a victim.

Lee also challenges the enhancement under the Supreme Court's recent decision in Apprendi v. New Jersey, 530 U.S. ___, 68 U.S.L.W. 4576 (June 26, 2000) (No. 98-478). We find that, because Lee received a sentence of imprisonment and term of supervised release that did not exceed the statutory maximum set out in 18 U.S.C.A. § 2241(a)(1), no plain error occurred. See United States v. Aguayo-Delgado, ___ F.3d ___, 2000 WL 988128, at *6 (8th Cir. July 18, 2000).

Accordingly, we affirm Lee's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED