**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

PAULETTE ETOTY, a/k/a Chinyere
Etoty, a/k/a Florence Lowell,

*Defendant-Appellant.*

No. 10-4999

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(1:09-cr-00609-CCB-1)

Argued: March 21, 2012

Decided: May 16, 2012

Before WILKINSON and DAVIS, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Judge Wilkinson wrote the
opinion, in which Senior Judge Hamilton joined. Judge Davis
wrote an opinion concurring in the judgment.

**COUNSEL**

**ARGUED:** Martin Bahl, OFFICE OF THE FEDERAL PUB-LIC DEFENDER, Baltimore, Maryland, for Appellant. Rachel Miller Yasser, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Mushtaq Z. Gunja, Assistant United States Attorney, Aaron Ver, Law Clerk, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

**OPINION**

WILKINSON, Circuit Judge:

The defendant, Paulette Etoty, appeals the sentence imposed for her 2010 federal convictions of social security fraud and aggravated identity theft. In particular, Etoty challenges the district court's application of the "vulnerable victim" enhancement in Section 3A1.1(b) of the Sentencing Guidelines. We find no error in the district court's application of the enhancement, and we affirm.

I.

In 1995, Etoty pled guilty in the U.S. District Court for the Middle District of Florida to twelve counts of Social Security fraud in violation of 42 U.S.C. § 408(a)(7)(B). At Etoty's sentencing for those crimes, a variety of evidence was introduced about one of her victims, Paulette Taylor. This evidence included Ms. Taylor's birth certificate and Social Security number. Etoty further learned that Ms. Taylor was a disabled adult receiving Social Security benefits and living with her mother in Illinois.

While incarcerated for her Florida convictions, Etoty used this identifying information to commit further fraud. She applied for a Social Security card in Ms. Taylor's name and number while in jail, and used Ms. Taylor's information to enter a halfway house following her release. Etoty continued to misuse Ms. Taylor's information to commit additional frauds, including obtaining Ms. Taylor's birth certificate and a driver's license in Ms. Taylor's name, and using Ms. Taylor's credit to take out substantial loans.

For these offenses, Etoty was charged in November 2009 with Social Security fraud in violation of 42 U.S.C. § 408(a)(7)(B) and aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1) and (c)(1). At trial, Ms. Taylor testified about her disability, specifically that she has "a learning disability" and that "something is wrong with [her] back." Ms. Taylor also testified about the belated discovery of Etoty's fraud, describing how she only became aware of the identity theft once it created difficulty processing her Social Security payments. Ms. Taylor also testified that, as a result of the fraud, she had been denied credit and had received multiple calls from collection agencies. The jury convicted Etoty of both charges on June 23, 2010.

At her sentencing hearing, Etoty disputed the Pre-Sentence Report's recommendation that she receive a two-level enhancement under § 3A1.1, applied because Ms. Taylor was a vulnerable victim. Etoty argued that she did not specifically target Ms. Taylor because of her disability, that she did not know whether Ms. Taylor's disability was physical or mental, and that Ms. Taylor's disability did not facilitate Etoty's fraud. The district court rejected these concerns, finding that "Etoty knew about [Ms. Taylor's] condition and nonetheless chose to use that identity, as was proven."

Completing the Guidelines calculations, the district court found that Etoty's base offense level on the Social Security fraud count was 6, with an additional 6-level enhancement

based on the amount of loss. With the 2-level vulnerable victim enhancement, this resulted in a total offense level of 14. Combined with criminal history category III, Etoty's advisory sentencing range was 21-27 months of imprisonment. The district court imposed a 21 month sentence on the Social Security fraud count, to be followed by a mandatory consecutive term of 24 months as required by 18 U.S.C. § 1028A for the aggravated identity theft conviction. This appeal followed.

## II.

We review the district court's ultimate sentencing determinations with deference, considering only whether the court abused the broad discretion afforded it. *Gall v. United States*, 552 U.S. 38, 51 (2007). In assessing the district court's calculation of the Guidelines, we review legal conclusions *de novo*, but we examine factual findings only for clear error. *United States v. McKenzie-Gude*, 671 F.3d 452, 463 (4th Cir. 2011).

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49. Under the Guidelines, a two-level increase attaches "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." U.S.S.G. § 3A1.1(b)(1). This in turn requires a two-step inquiry that the district court properly conducted in this case: "First, a sentencing court must determine that a victim was unusually vulnerable. Second, the court must then assess whether the defendant knew or should have known of such unusual vulnerability." *United States v. Llamas*, 599 F.3d 381, 388 (4th Cir. 2010).

Until 1995, the Guidelines imposed an additional criterion, requiring the district court to find that "the victim must also have been targeted by the defendant because of the victim's unusual vulnerability." *United States v. Holmes*, 60 F.3d 1134, 1136 (4th Cir. 1995) (emphasis omitted). But this "targeting" requirement is no longer the law. "In 1995, the Sen-

tencing Commission adopted Amendment 521, rendering it unnecessary for a sentencing court to find that a defendant had specifically targeted his victim." *United States v. Bolden*, 325 F.3d 471, 501 n.35 (4th Cir. 2003). Because Etoty's charged offenses were committed after the adoption of this amendment, there is no suggestion that the pre-1995 "targeting" requirement should apply to her.

On appeal, Etoty nevertheless seeks to resuscitate the abandoned "targeting" test, arguing that "nothing in the record supports a finding that Ms. Taylor's disability 'facilitated' the offenses in this case." Appellant's Br. at 5. But *Bolden*, on which Etoty relies, discussed the 1994 Guidelines -– which still included the targeting requirement—because the relevant conduct had taken place prior to the amendment, and so "the targeting requirement of the 1994 Guidelines must be applied . . . in order to avoid Ex Post Facto issues." *Bolden*, 325 F.3d at 501 n.35. Whether or not "facilitation" is merely "targeting" by another name, *see United States v. Monostra*, 125 F.3d 183, 190 (3d Cir. 1997) (describing the "targeting" analysis as turning on whether "the victim's vulnerability or susceptibility facilitated the defendant's crime"), the change in moniker does not improve the validity of Etoty's contention. It is quite clear that "[u]nder the plain meaning of § 3A1.1, no more is required" than the actual vulnerability of the victim and the defendant's knowledge of that vulnerability to support application of the enhancement. *United States v. Lynn*, 636 F.3d 1127, 1139 (9th Cir. 2011) (Appellant's "argument regarding a lack of 'nexus' between the offense . . . and the [vulnerability] is not grounded in the Sentencing Guidelines or any case law.") Indeed, this court only recently concluded that a "district court erred by adopting the outdated 'targeting test'" that Etoty presses before us here. *United States v. White*, 670 F.3d 498, 516 (4th Cir. 2012). There was simply no error in the two-prong test the district court employed to assess the applicability of the enhancement.

### III.

Finding no error in the test the district court applied, we thus turn to the district court's analysis first of Ms. Taylor's vulnerability and, second, of whether the defendant was aware of Ms. Taylor's disability.

### A.

First, Ms. Taylor meets the standard for vulnerability set forth by the Guidelines. The Application Notes for § 3A1.1 require the victim to be "unusually vulnerable due to age, physical or mental condition, or . . . otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 app. n.2. The evidence in this case was clear that Ms. Taylor was a disabled adult receiving Social Security disability benefits. Ms. Taylor testified at trial that she had "a learning disability" and that "something is wrong with [her] back." The district court went further, finding that the evidence showed how Ms. Taylor's disability "could make a person somewhat less likely to be able to resist or protect themselves from this kind of fraud." Specifically, "the fact that Ms. Taylor . . . was not working . . . makes it somewhat less likely to have conflicting wage records and to have this fraud uncovered." "'[V]ulnerability' is the sort of fact which the trial court is peculiarly well positioned to gauge," *United States v. White*, 903 F.2d 457, 463 (7th Cir. 1990), and Etoty has given us no reason to abandon our traditional deference to the district court's well-grounded factual findings on this point.

We are especially disinclined to regard the district court's reasoned conclusion as clearly erroneous when common sense illustrates how the victim's vulnerability made her "particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 app. n.2. A person in Ms. Taylor's situation, receiving a fixed income of Social Security benefits, might be less inclined to take the sort of precautions against fraud and identity theft that are necessary for someone actively engaged in the job

market. She had less need to monitor her employment or credit history, since they were not relevant to her source of income. As a result, Ms. Taylor was not able to blow the whistle promptly on Etoty's fraud as someone without her disability might. In fact, the role that a victim's disability plays in making it less likely that a crime will be discovered is one of the key reasons why a sentencing enhancement is necessary for defendants who prey on vulnerable victims. The Seventh Circuit explained this connection:

> The "vulnerable victim" sentencing enhancement is intended to reflect the fact that some potential crime victims have a lower than average ability to protect themselves from the criminal. Because criminals incur reduced risks and costs in victimizing such people, a higher than average punishment is necessary to deter the crimes against them. . . . Defrauders who direct their activities not against banks, insurance companies, or large investors, but instead against people [with] . . . mental or educational deficiencies, . . . do not need to take as many precautions against the discovery of their scheme by the intended victims and in any event are less likely to be prosecuted, because the victims are less likely to know that they have been defrauded or if they know to have the know-how and initiative required to press a criminal complaint or bring a civil suit. *United States v. Grimes*, 173 F.3d 634, 637 (7th Cir. 1999).

The Guidelines do offer two hypothetical scenarios intended to cabin the reach of "vulnerability," however. First, they provide that the enhancement should "not apply in a case in which the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile." U.S.S.G. § 3A1.1 app. n.2. As an initial matter, it is doubtful whether such a case could satisfy the second prong of the "vulnerable victim" test, since it is unlikely that the perpetrator of such a generalized scheme would know of a ran-

dom recipient's vulnerability. *See United States v. Zats*, 298 F.3d 182, 189 n.5 (3d Cir. 2002) ("The missing element in that case is that the defendant had no reason to know such a victim existed."). It is nonetheless clear that this case does not fall within the scenario the Note posits. This is a case of identity theft, not of boiler room stock fraud. Etoty did not use a random falsified Social Security number that happened to belong to Ms. Taylor. She expressly chose to use Ms. Taylor's identification after learning of it at her earlier sentencing —also for Social Security fraud.

Second, the Guidelines also suggest that "a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank." U.S.S.G. § 3A1.1 app. n.2. This does no more than clarify that a person is not "unusually vulnerable" merely by virtue of being a victim. This limitation does serve its purpose—since "the whole idea of fraud is to prey on the vulnerable," it "would be *de trop*" to apply the enhancement in every single case of fraud. *United States v. Newman*, 965 F.2d 206, 211 (7th Cir. 1992). In this case, however, Ms. Taylor's vulnerability is not solely her victimhood at Etoty's hands, it is her disability. The district court found that vulnerability well supported by the record. As a result, we need not fear that the "vulnerable victim" enhancement in this case strays into either area of caution identified by the Guidelines.

## B.

Second, for the enhancement to apply, Etoty must "know[ ] or should have known of the victim's unusual vulnerability." U.S.S.G. § 3A1.1. This point is not seriously contested. Etoty concedes that "there is no dispute that, following Ms. Etoty's 1995 Florida sentencing, she knew Ms. Taylor was disabled." Appellant's Reply Br. at 7. Etoty does contend, however, that she did not know the precise nature of Ms. Taylor's disability, and thus of her vulnerability, and that the enhancement should therefore not apply.

But such specific proof is not required to satisfy the requirements of § 3A1.1. In *United States v. White*, 670 F.3d 498 (4th Cir. 2012), this court clarified that the gravamen of this analysis is whether the defendant knew that the victim was vulnerable, not whether he knew the precise source of that vulnerability. In addressing whether children could be classified as vulnerable victims, we explained:

> The fact that White might be able to demonstrate that he did not know *the specific ages* of the children would not be dispositive. The relevant question is whether White knew or should have known of the children's vulnerability. While a specific age can be a proxy for such vulnerability, it is not essential. *Id.* at 516.

It is irrelevant that "we do not know the nature or extent of M[s]. Taylor's learning disability" or "whether her disability payments were linked to her learning disorder or her back problems." Appellant's Reply Br. at 3. There is no need for a medical diagnosis to conclude that the victim was vulnerable, nor is it necessary for the defendant to possess scientifically precise knowledge to satisfy the requirement that she know of her victim's vulnerability. Etoty's conceded knowledge that Ms. Taylor was disabled and was receiving disability payments is ample proof that she knew her victim was unusually vulnerable. Etoty does not challenge the district court's self-evident conclusion that she possessed such relevant knowledge, and there is no basis in law or logic for us to impose the more stringent standard of proof that Etoty urges.

## IV.

Ultimately, there is no serious dispute that Etoty selected a disabled victim with full knowledge of that victim's vulnerability. As the district court correctly concluded, those two facts are the only ones that the Guidelines require for applica-

tion of the "vulnerable victim" enhancement. We therefore conclude that there was no error in the defendant's sentencing, and the judgment of the district court is

*AFFIRMED*.

DAVIS, Circuit Judge, concurring in the judgment:

The majority opinion appropriately identifies our standard of review, notes that the district court applied the correct version of the United States Sentencing Guidelines Manual, *see United States v. White*, 670 F.3d 498, 516 (4th Cir. 2012), and properly holds that the district court did not commit clear error in its factual findings that (1) Etoty's undeniably disabled victim was "vulnerable" and (2) Etoty had actual knowledge (when she committed the offenses) that her victim was vulnerable, *see United States v. Llamas*, 599 F.3d 381, 388 (4th Cir. 2010) (citing U.S.S.G. § 3A1.1(b)(1)). For these reasons, I concur in the judgment.