**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Dale E. GRAVES, Defendant–Appellant.**

**No. 94–3834.**

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 7, 1996.

Decided Oct. 10, 1996.

Bradley W. Murphy (argued), Office of the U.S. Attorney, Peoria, IL, for Plaintiff–Appellee.

Dale E. Graves, Medical Center for Federal Prisoners, Springfield, MO, D. Michael Rickgauer (argued), Williams & Associates, East Peoria, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and COFFEY and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

Between August 1993 and July 1994, a 61–year–old man named Dale Graves, who had no previous criminal record (other than for driving offenses) but had suffered a stroke the previous year, robbed the same bank in Peoria three times at gunpoint. He was caught leaving the bank the third time, was prosecuted, pleaded guilty to three counts of aggravated bank robbery and one count of using or carrying a gun during the commission of a violent felony, and was sentenced to 112 months in prison. He appealed. His lawyer filed an *Anders* brief (a brief in support of a motion to withdraw from the case on the ground that there are no nonfrivolous grounds for an appeal, see *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)), which discussed a single—and frivolous—issue, concerning the fine imposed on Graves. We directed the lawyer to order, and review, the transcript of the guilty-plea proceeding and to file a further brief, discussing compliance with Rule 11 of the Federal Rules of Criminal Procedure, which governs the conduct of guilty-plea hearings. He did so, filing a second *Anders* brief, which recited that there had been no violations of Rule 11. But later, in response to a further order directing him to consider two specific Rule 11 issues—violation of Rule 11(c)(5) and misrepresentation of the availability of good-time credits for the gun offense—he filed not another *Anders* brief but instead a brief on the merits, urging reversal on the basis of the misrepresentation only.

The district judge had failed to inform Graves, as Rule 11(c)(5) required him to do, that any statement that Graves made at the plea hearing could be made the basis for, or otherwise used in, a prosecution against him for perjury. As there is no current or prospective prosecution of Graves for perjury, the violation of Rule 11(c)(5) was harmless. E.g., *United States v. Bachynsky*, 949 F.2d 722, 727 (5th Cir.1991); *United States v. Gomez–Cuevas*, 917 F.2d 1521, 1526 (10th Cir.1990); *United States v. Pinto*, 838 F.2d 1566, 1569 (11th Cir.1988) (per curiam); cf. *McCleese v. United States*, 75 F.3d 1174, 1181 (7th Cir.1996). If the violation of the rule weren't harmless, because there was a prospect of a perjury trial, still the proper sanction would be exclusion of the statement from that trial rather than throwing out the guilty plea. Advisory Comm. Note to 1982 Amendment of Fed.R.Crim.P. 11, subdivision (c)(5) (last paragraph); see *United States v. Conrad*, 598 F.2d 506, 509 and n. 1 (9th Cir.1979).

The issue of misrepresentation arises from the judge's having told Graves, on the basis of a confident but incorrect (see 18 U.S.C. § 3624(b)(1)) statement by Graves's lawyer (the same lawyer who has represented him throughout the appeal), that Graves could not get any good-time credits on the sentence for the gun offense, which accounted for 60 of the 112 months to which the judge sentenced him. Again the misrepresentation was harmless, but not, as the government argues, because it *must* have made pleading guilty seem a worse choice than it was. Had Graves known he could get good-time credits, he would, according to the government, have been all the more eager to plead guilty. But that is not necessarily so. The misrepresentation concerning the severity of the sentence was a misrepresentation about the consequences of going to trial as well as about the consequences of avoiding trial by pleading guilty. Graves had used a gun in all three of his robberies, so he could have been tried for three gun offenses and if

convicted would have received consecutive sentences. 18 U.S.C. § 924(c)(1). The harsher he thought the sentences would be (and unavailability of good-time credits would make them harsher), the more reluctant he would be to go to trial.

While discovering that the gun statute is not quite so harsh as he was led to believe could theoretically have made Graves less eager to plead guilty by making the consequences of going to trial and losing less fell, common sense tells us that the possibility is too remote to justify allowing him to withdraw his plea on the ground that had he known the truth he would have opted for a trial instead. A misrepresentation that makes the defendant think that the sentence which he is inviting by pleading guilty is longer than it really is will rarely induce a plea, for normally the heavier the sentence invited by the plea the less likely the defendant will be to plead rather than roll the dice for trial. We cannot find a case which relieves the defendant from his plea in such circumstances—indeed we find only two reported appellate cases in which the defendant sought to be relieved from his plea because the sentence imposed pursuant to the plea was lighter than he had been led to expect. *United States v. Raineri*, 42 F.3d 36, 42 (1st Cir.1994); *United States v. Smith*, 440 F.2d 521, 532 (7th Cir.1971) (dissenting opinion). The fact that the judge isn't required to inform the defendant concerning good-time credits, e.g., *United States v. Garcia*, 698 F.2d 31, 33 (1st Cir.1983), is some indication that judges do not believe that the availability or not of such credits is likely to influence the defendant's decision to plead guilty or go to trial.

We have thus far assumed that Graves *wants* to vacate his guilty plea; but this is not certain. The filing of a notice of appeal on behalf of a defendant indicates that the defendant wants to challenge the judgment of the district court. But the judgment in a federal criminal case is the sentence, and ordinarily when a defendant pleads guilty and then appeals all he is challenging is the sentence and not the anterior conviction. The fact that the first *Anders* brief discussed only a sentencing issue (the amount of the fine) was consistent with the standard pattern. It was this court that injected the issue of the validity of the plea of guilty into the appeal. Even if the plea were infected by error at the plea hearing, if the defendant preferred pleading guilty to going to trial it would be improper for the judge to throw out the plea on his own initiative; the judge is not supposed to engage in plea bargaining or to disregard the bargain struck. See Fed. R.Crim.P. 11(e)(1), (3), (4); *United States v. Barnes*, 83 F.3d 934, 939 (7th Cir.1996); *United States v. Ritsema*, 89 F.3d 392, 402 (7th Cir.1996); *United States v. Andrade-Larrios*, 39 F.3d 986, 988–90 (9th Cir.1994); *United States v. Olesen*, 920 F.2d 538, 540–41 (8th Cir.1990). Eventually Graves's lawyer did file a brief on the merits challenging the validity of the plea on the ground of misrepresentation of its consequences, and by doing so recreated an adversary setting. We assume he did this with Graves's acquiescence, but that acquiescence has legal significance only if Graves is mentally competent to participate in the appeal process to the extent of deciding that he wants to withdraw his guilty plea and take his chances with either a further round of plea bargaining or a trial. Competence is presumed, but we are about to see that there is reason to doubt Graves's competence to plead guilty, and this implies doubt as well about his competence to decide to challenge his guilty plea on appeal.

Ordinarily, it is true, the fact that a defendant is incompetent does not affect the appeal. See ABA *Criminal Justice Mental Health Standards* 7–5.4 (2d ed. 1980 & 1986 supp.). A defendant's participation in the appeal is generally quite limited, because the decisions involved in prosecuting an appeal are almost entirely of a technical legal character. But challenging a plea of guilty involves the additional consideration that if the challenge succeeds the defendant may well end up with a heavier sentence (for the sentence imposed pursuant to the plea may have reflected a "good" plea bargain compared to the results of a trial), and this is a risk of which the defendant must be made aware before the appeal is taken. If there is reason to believe that he was incompetent to assess the risk, a determination of competence

should be made before the appeal is allowed to proceed. Cf. 7th Cir.R. 51(e).

In the usual case, however, the appeal will have followed by only a short time the plea bargaining and the entry of the plea, so that any doubt about the defendant's competence to appeal will spill over to his plea. And vice versa, as this case illustrates: Graves's competence to decide to challenge his guilty plea by way of appeal is placed in doubt by doubts about his competence to plead guilty in the first place.

His lawyer opened the plea hearing by warning the judge that as a result of the stroke his client "sometimes has a little trouble communicating the verbal language." To the second question that the judge asked Graves—how old he was—Graves answered "Seventy—X." (He was 61.) The judge asked Graves to tell him about his medical condition, and Graves said, "Well, I've got it all this way, this one here, and I can't write—I can't write very much." The judge asked Graves, "Do you still think clearly?" Graves answered, "Yeah, pretty much. Some of it is—some of it is not so good." The judge conducted a detailed inquiry concerning the crimes. Most of Graves's answers were lucid, but some of them indicated a failure of memory or understanding. For example, to the question whether he remembered robbing the bank the first time he answered, "Well, some of it I can't—I can't— I can't tell. I'm sorry." With prompting by the judge he was able to describe, though very haltingly, the essential facts of each of the three robberies and to confirm that he had been armed and that he knew he had been committing a crime.

At the end of the hearing the judge ruled that Graves "is fully competent and capable of entering an informed plea.... I have been very sensitive to the question of whether or not he is in fact physically and mentally competent to tender a plea. It is my firm belief after discussing this matter with him and his attorney that the problems in communication are not a problem of understanding," but merely a stroke-produced difficulty with producing words. The judge instructed the probation officer to "gather whatever medical information is possible" as part of the presentence investigation and advise him "whether there is a need for some sort of supplemental medical examination to help me in understanding fully his medical condition at the time of sentencing."

Graves's lawyer did not raise the issue of his client's competence at the plea hearing, or indeed until queried by us at the oral argument of the appeal. But the district judge is required to order a competency hearing on his own initiative "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). The hearing contemplated by the statute is an evidentiary hearing. See §§ 4241(c), 4247(d). The effort by the district judge to test, through questioning of Graves and his lawyer, Graves's competence was entirely appropriate to making a judgment whether reasonable cause to believe that Graves was incompetent existed. *United ed States v. Zarnes,* 33 F.3d 1454, 1472 (7th Cir.1994); *United States v. Johns,* 728 F.2d 953, 956 n. 2 (7th Cir.1984); *Rose v. United States,* 513 F.2d 1251, 1255 n. 4 (8th Cir. 1975). But if, after that preliminary inquiry, reasonable cause to believe the defendant incompetent persisted, an evidentiary hearing became mandatory. *United States v. Johns,* supra, 728 F.2d at 956 and n. 2; *United States v. Crosby,* 739 F.2d 1542, 1544–46 (11th Cir.1984). That is the situation here.

A 61–year–old has a severe stroke (the presentence investigation report states that the stroke left Graves speaking gibberish and unable to stand, and with diminished sensation on his right side), and shortly afterward, in a complete departure from his normal behavior—Graves had been employed for 35 years by the Caterpillar corporation and had no significant criminal record—begins robbing banks. Or rather, and nuttily, robs one bank over and over again (with no effort at disguise, and with a physical disability that both impairs escape and facilitates identification), ensuring that he will eventually be

caught. When he is caught and appears in court he has serious difficulty speaking and some paralysis, and his answers to the judge's questions indicate some impairment of memory and understanding. In these circumstances a suspicion of possible incompetency cannot be dispelled without a hearing at which a neurologist who has examined Graves testifies. Cf. *United States v. Crosby, supra,* 739 F.2d at 1545; *Watson v. State,* 596 S.W.2d 867 (Tex.Crim.App.1980). Judges are not experts in assessing the effects of a stroke on mental functioning, so if there is as much indication as there is here that the effects may be substantial the judge must obtain the advice of those who are the experts on those effects.

The judgment of the district court must thus be reversed and the case remanded for a hearing on the defendant's competence to participate in the guilty-plea proceedings. But we must also consider whether the hearing should focus on his competence two years ago when he pleaded or on his competence to replead today. Determining past as distinct from present competence has been ruled to be infeasible when more than a few years have elapsed since the plea. *Drope v. Missouri,* 420 U.S. 162, 183, 95 S.Ct. 896, 909, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 387, 86 S.Ct. 836, 843, 15 L.Ed.2d 815 (1966); *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam). But when the interval is shorter such determinations are allowed. *Galowski v. Berge,* 78 F.3d 1176, 1181 (7th Cir.1996); *United States ex rel. Bilyew v. Franzen,* 842 F.2d 189, 192–93 (7th Cir.1988); *Cremeans v. Chapleau,* 62 F.3d 167, 169–70 (6th Cir.1995); *United States v. Mason,* 52 F.3d 1286, 1293 (4th Cir.1995). The district judge should decide in the first instance whether a retrospective determination is feasible in this case. If it can still reliably be determined that Graves was competent to plead guilty, there is no need to allow him to replead; if it can't be reliably determined, then his present competence to plead or, if he prefers, not to plead and instead to go to trial must be determined. The determination will most

likely make the question of his competence to challenge the guilty plea on appeal moot.

REVERSED AND REMANDED.