**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Barry J. WOLF, Defendant–Appellant.**

No. 01–3560.

United States Court of Appeals,
Seventh Circuit.

Submitted Aug. 20, 2002.
Decided Aug. 21, 2002.

Before BAUER, KANNE, and EVANS, Circuit Judges.

ORDER

Barry J. Wolf pleaded guilty to twelve counts of mail fraud, in violation of 18 U.S.C. §§ 2 and 1341, and one count of commodity fraud, in violation of 7 U.S.C. §§ 6o (1) and 13(a)(2), and was sentenced to concurrent terms of 60 months' imprisonment. Wolf appeals, and his counsel moves to withdraw under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), because he is unable to discern any nonfrivolous issue for appeal. Our review is limited to the potential issues discussed in counsel's thorough *Anders* brief and in Wolf's response filed pursuant to Circuit Rule 51(b) (which generally tracks counsel's brief). *See United States v. Tabb*, 125 F.3d 583, 584 (7th

Cir.1997) (per curiam). For the reasons set forth below, we grant counsel's motion to withdraw and dismiss this appeal.

The facts presented during Wolf's change-of-plea colloquy, which he admitted were true, establish the following. Between September 1995 and March 1997, Wolf utilized a fraudulent commodities-trading scheme to defraud over 175 investors. Wolf, a commodity trading advisor, solicited investors throughout the country to open managed commodity trading accounts with his firms, Barry Wolf Company and Wolf Commodity Corporation a/k/a Wolf Commodities Corporation. Wolf used misleading radio advertisements that promised investors large returns on their investments from seasonal increases in the prices of heating oil and unleaded gasoline. He delivered a misleading sales pitch to investors who responded to the advertisements, including lying to them about his investment prowess and the fact that he had made clients millionaires. Although he touted instances in which his clients had made significant returns, none actually realized a profit and most suffered catastrophic losses due to Wolf's speculative trading decisions.

Wolf also misled potential customers by falsely stating that he was a millionaire, falsely stating the size of his investment companies, and falsely promising that he could prevent losses to customers by utilizing a device called a "stop-loss order"—an order placed with the broker to sell when a commodity reaches a certain price. Wolf also had many of his customers execute powers of attorney that authorized him to make all trading decisions on their accounts. As a result of trades executed on behalf of investors, Wolf earned more than $900,000 in commissions. With respect to the twelve mail fraud counts, Wolf, in executing his scheme, sent via Fed Ex packages of misleading promotional materials to potential investors; investors, in turn, sent him checks and account-opening documents. With respect to the commodity fraud count, Wolf made materially misleading statements in a November 1995 telephone call to an investor regarding the risks associated with additional investment in an account managed by Wolf Commodity Corporation.

In October 2000 Wolf was indicted in the Northern District of Illinois. In May 2002 he entered, pursuant to a written plea agreement, guilty pleas to all of the charges against him. Wolf was sentenced to concurrent terms of 60 months' imprisonment and three years' supervised release on each count and ordered to pay restitution of $2,966,591.30.

Counsel first examines whether Wolf could challenge his guilty pleas on the basis that the district court failed to comply with Fed.R.Crim.P. 11, and we agree that any such challenge would be frivolous. We note that Wolf has not evidenced, either in the district court or in his Rule 51(b) response in this court, a desire to challenge the district court's compliance with Rule 11; as such, counsel did not need to raise this issue in his *Anders* brief. *United States v. Knox,* 287 F.3d 667, 671–72 (7th Cir.2002). In any event, the district court substantially complied with Rule 11, which is all that we require. *See United States v. Schuh,* 289 F.3d 968, 975 (7th Cir.2002). While the court failed to explain to Wolf that any false answers he gave during his change-of-plea colloquy could subject him to prosecution for perjury, *see* Rule 11(c)(5), that omission was harmless because there is no suggestion that Wolf is subject to a current or prospective prosecution for perjury. *United States v. Graves,* 98 F.3d 258, 259 (7th Cir.1996). Additionally, while the court did not explain to Wolf the effect of a term of supervised release, *see* Rule 11(c)(1),

that was harmless error because the maximum sentence Wolf could face if his supervised release were revoked (eight years) is less than the maximum sentence of imprisonment Wolf could have received (and of which he was informed) for all of his counts of conviction if the sentences were imposed consecutively (65 years). *See* 18 U.S.C. § 3584 (court may impose sentences concurrently or consecutively); *Schuh,* 289 F.3d at 975; *see also United States v. Prado,* 204 F.3d 843, 846 (8th Cir.) (failure to inform defendant of effect of supervised release harmless error because there was no evidence he would not have pleaded guilty if he had been properly informed), *cert. denied,* 531 U.S. 1042, 121 S.Ct. 638, 148 L.Ed.2d 544 (2000).

■ Counsel next examines whether Wolf could argue that the district court abused its discretion by denying his motion to withdraw his guilty plea. After he pleaded guilty but before he was sentenced, Wolf moved to withdraw his guilty pleas purportedly because he had received ineffective assistance of counsel, had pleaded guilty for reasons other than his factual guilt, and the government had breached the plea agreement. The district court denied the motion, finding that the government had not breached the agreement and that Wolf had not received ineffective assistance or proved that he was innocent of the charges against him. Counsel first considers whether Wolf could argue that his plea was not knowing and voluntary due to the fact that he pleaded guilty solely because he believed that he was not receiving adequate medical attention at the Metropolitan Correctional Center and thought that he would get better treatment if he pleaded guilty and was transferred to another facility. But the fact that a defendant pleaded guilty because he believed he would receive better medical treatment if he did so does not constitute a

"fair and just reason" for allowing him to withdraw his plea. *See* Fed.R.Crim.P. 32(e); *United States v. Black,* 201 F.3d 1296, 1299–1300 (10th Cir.2000).

Counsel next examines whether Wolf could argue that the district court should have allowed him to withdraw his plea because he was innocent of the charges against him. But as counsel correctly notes, Wolf admitted at his change-of-plea hearing that he was guilty of the charged offenses. A defendant's bare assertions of innocence, unsupported by any evidence, that contradict his sworn testimony at a change-of-plea hearing do not constitute a sufficient reason to allow him to withdraw his plea. *Knox,* 287 F.3d at 671; *United States v. Stewart,* 198 F.3d 984, 987 (7th Cir.1999).

■ Counsel further examines whether Wolf could claim that his motion to withdraw his plea was erroneously denied because he pleaded guilty based on counsel's ineffective assistance. Counsel posits that Wolf could argue that counsel was ineffective because he fell asleep during Wolf's presentence report interview (an unsupported allegation we cannot verify because it was raised only in a letter that Wolf had sent to the district court) and failed to negotiate with the government for a downward departure pursuant to U.S.S.G. § 5K1.1 based on his substantial assistance to the government. As in most instances, however, this issue is not ripe for adjudication on direct appeal because the record does not provide clear evidence that counsel was ineffective. *Schuh,* 289 F.3d at 976; *United States v. Garrett,* 90 F.3d 210, 214–15 (7th Cir.1996). If Wolf wishes to claim ineffective assistance, he must do so in a collateral proceeding where the record can be more fully developed.

Counsel also considers whether Wolf could argue that he should have been allowed to withdraw his plea because the

government breached the plea agreement. According to Wolf, the government breached an implicit promise not to provide the probation office with information regarding his relevant conduct beyond that contained in his plea agreement. This argument is frivolous, however, because the plea agreement itself provides that it is the "entire agreement" between the parties (Plea Agreement at 1), and contains an acknowledgment by Wolf that the government would "fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing." (Plea Agreement ¶ 15.) Therefore, any argument that the district court abused its discretion by denying Wolf's motion to withdraw his plea would be frivolous.

Counsel next considers whether Wolf could challenge his sentence, concluding that any attempt would be frivolous because he agreed in his plea agreement to waive his rights to appeal his sentence. A waiver of appeal is valid and enforceable if it is express and unambiguous, and the record demonstrates that it was made knowingly and voluntarily. *United States v. Woolley*, 123 F.3d 627, 631–32 (7th Cir. 1997). Here, Wolf's plea agreement clearly set forth that he had the right to appeal his sentence but agreed to waive "the right to appeal any sentence within the guideline range." (Plea Agreement ¶ 12.) Additionally, the court explained the waiver clause to Wolf, who indicated at the change-of-plea hearing that he understood its implications. Wolf's waiver of appeal therefore was valid, and any attempt to challenge his sentence would be frivolous.

Counsel last examines whether Wolf could challenge the amount of restitution imposed by the district court, $2,9966,-591.30. Counsel notes that Wolf could argue that the amount of restitution ordered by the district court was improper because it exceeded the amount of loss agreed to in his plea agreement. But this argument would be frivolous because the district court must assess restitution based on the actual amount of loss caused by the defendant's conduct, 18 U.S.C. § 3663A(b), and Wolf's plea agreement did not contain any agreement regarding the amount of loss— it stated that he caused a loss of "over $1,922,632.75." (Plea Agreement ¶ 18.) We therefore could not find that the district court abused its discretion in ordering Wolf to pay as restitution the full amount of loss caused by his conduct.

Accordingly, for the foregoing reasons, we GRANT counsel's motion to withdraw and DISMISS Wolf's appeal.