UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael C. ANTONELLI, Defendant–
Appellant.

No. 02–2753.

United States Court of Appeals,
Seventh Circuit.

Argued June 10, 2003.

Decided Jan. 5, 2004.

Matthew Getter, Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Richard H. Parsons, Andrew J. McGowan, Office of the Federal Public Defender, Peoria, IL, for Defendant–Appellant.

Before KANNE, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

ORDER

In February 2002 Michael Antonelli pleaded guilty to one count of bank robbery, 18 U.S.C. § 2113(a). He argues on appeal that the district court erred by not ordering a competency hearing. Because the district court did not have reasonable cause to doubt Antonelli's present competence, we affirm the judgment of the district court.

On October 12, 2001, Antonelli walked into Firstar Bank in Burbank, Illinois, and handed one of the tellers a note reading: "GiVE ME what is in thE till No rEd diE --- No problEMS thanks rigor mortis." Antonelli kept one of his hands in his coat as though he were concealing a weapon. The teller gave him $2,790, including bait bills, and then Antonelli fled. The police later found him hiding in a garbage can a short distance from the bank.

A lawyer from the federal defender program was appointed for Antonelli at his first appearance the next day, but Antonelli immediately proceeded to pepper the court with pro se filings, many of them describing bizarre thought patterns that he was allegedly engaged in around the time he committed the bank robbery. The court did not act on these submissions,

except to grant Antonelli's request that Doug Roller be substituted as his counsel. Antonelli appeared in court for several status hearings at which he engaged in coherent discussions with the judge, including one about the quality of Roller's representation and another about waiving a possible conflict of interest that Roller might have.

With Roller's assistance, Antonelli ultimately decided to plead guilty without a plea agreement. The district court engaged in an extensive discussion at the change-of-plea hearing with Antonelli, Roller, and the prosecutor to determine whether Antonelli was competent to plead guilty. During that exchange the court first asked Roller whether he had any doubt about Antonelli's competence to plead guilty. Counsel's initial response suggested that he did have doubts, especially given Antonelli's history of mental illness. But when the judge pressed him to comment on Antonelli's present competence, Roller responded that he thought Antonelli was presently "lucid" or "competent." He ultimately said, "After talking to Mr. Antonelli and rethinking his position in light of the Court's comments, I do believe that he is competent to enter a plea today." Antonelli also commented on his own mental state. He explained that he suffers from manic depression but is receiving treatment. He said, "I am taking medicine now and they have leveled me out on the medicine where I firmly believe I am competent. No doubt in my mind." The prosecutor also said that she thought Antonelli was presently competent to plead. Finally, the judge offered his own observations on Antonelli's mental state:

Well, I will say this. I mean, every time you have been before me on this case, I have never really had a reason to doubt or question your ability to both understand what I am telling you, or the proceedings, or to articulate, which you have done on occasion. So, I do not have any present doubt that you are competent.

Only after this extensive inquiry did the judge determine that Antonelli was competent to proceed with the plea hearing.

Antonelli's behavior during the remainder of the plea hearing was characterized by intelligent, rational discussions with the judge about his strategic reasons for pleading guilty and waiving an insanity defense, as well as his concerns that he might be sentenced as a career offender. He explained to the judge that, although he and Roller disagreed about the propriety of an insanity defense, he had decided to waive the defense because he didn't "want to pay the consequences of getting found guilty and getting the extra three points and more time." Antonelli also articulated his concern that if he were to be sentenced as a career offender he would not gain any benefit from pleading guilty. Antonelli did have trouble discussing the details of the offense, but he said it was because he had been high on PCP when he committed the bank robbery. The judge ultimately found a sufficient factual basis for Antonelli's guilty plea and accepted it.

A month after the plea hearing, Antonelli moved to proceed pro se, specifically citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and complaining that Roller had not filed motions a month after promising to do so. A couple days later Antonelli also filed a request for a mental examination to support his argument for a downward departure based on diminished capacity. Afterward, Roller filed a similar request pursuant to 18 U.S.C. § 2552(c). The government opposed the requests on the ground that any examination intended to bolster Antonelli's planned diminished capacity argument at sentencing would

serve no purpose regardless of the findings; the prosecutor argued that a downward departure was unavailable to Antonelli as a matter of law because of the violent nature of his offense, his criminal history, and his own admission of being high on PCP when he committed the bank robbery.

The court held a hearing on Antonelli's motion to proceed pro se, at which the judge determined that Antonelli had the present capacity to make decisions about his representation and then allowed him to proceed pro se with Roller continuing as standby counsel. The court invited Antonelli to reply to the government's response regarding the requested mental examination before ruling on that motion. He did file a reply and several related documents in which he intelligently answered the government's opposition to a downward departure for diminished capacity. Antonelli explained that he was not presently incompetent, but that his long history of untreated mental illness supported his request for a mental examination to build a foundation for a downward departure.

The judge held a sentencing hearing and denied Antonelli's motion for a mental examination because "whatever it produced would not be any basis for [the court] to downwardly depart." The judge noted that the nature of the offense and Antonelli's criminal history precluded a downward departure. The judge also noted, once again, that Antonelli had been competent when he pleaded guilty.

Antonelli argues now that the judge should have ordered a competency hearing before accepting his guilty plea because he requested a hearing, because he had a history of mental illness and incompetence, and because his attorney had doubts about his competence. Antonelli does not argue that the record established that he was incompetent, but only that the judge should have ordered a competency hearing. Although he frames the issue as though the judge ignored his request for a competency hearing, Antonelli never properly requested such a hearing. He filed a pro se document, when he was represented by counsel, requesting a competency hearing, but the court was under no obligation to respond to that document or consider it a formal request. *United States v. Traeger,* 289 F.3d 461, 471 (7th Cir.2002) (defendant represented by counsel not entitled to decision on pro se motion). And after Antonelli's counsel of choice had been appointed, the lawyer never requested a formal competency hearing either. Neither did the government request a hearing. So Antonelli's real argument on appeal is that the district court should have ordered a competency hearing *sua sponte.*

A defendant is initially presumed to be competent to plead guilty. *United States v. Graves,* 98 F.3d 258, 260 (7th Cir.1996). If, however, a district court has reasonable cause to believe that the defendant may presently be incompetent, it must hold a competency hearing, even if neither party has requested one. 18 U.S.C. § 4241(a). The test for competence is two-fold; a defendant is competent to plead guilty if he has "a rational as well as factual understanding of the proceedings against him" and "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Dusky v. United States,* 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *see also* 18 U.S.C. § 4241(a); *Drope v. Missouri,* 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *United States v. Grimes,* 173 F.3d 634, 635–36 (7th Cir.1999).

In this case there is no dispute that Antonelli has a history of mental illness. On appeal he focuses much attention on his history, as well as past psychiatric diagnoses of incompetence, but he cites no

cases holding that a history of mental illness alone, irrespective of a defendant's present mental state, requires a competency hearing. To the contrary, we have said that although a history of mental illness is relevant to assess a defendant's competence, it is not sufficient to create reasonable cause for a competency hearing; a district court must focus on the defendant's mental state at the time of the hearing. *See Eddmonds v. Peters,* 93 F.3d 1307, 1314 (7th Cir.1996); *United States v. Morgano,* 39 F.3d 1358, 1374 n. 23 (7th Cir.1994).

The district court correctly focused its inquiry not on Antonelli's history of mental illness but rather on whether he could understand the proceedings and consult with his attorney at the time of the guilty plea. There is little doubt that Antonelli had a "rational as well as factual understanding of the proceedings against him." *Dusky,* 362 U.S. at 402, 80 S.Ct. 788. He understood the meaning of a guilty plea: "I am pleading guilty because I did rob the bank." He understood the strategy behind pleading guilty: "I don't want to pay the consequences of getting found guilty and getting the extra three points and more time." He also understood a fairly complicated risk calculation involved in his guilty plea: "It is my understanding that I am not a career offender and that is why I am pleading guilty. If I am a career offender, I lose nothing by going to trial." At his sentencing hearing, too, Antonelli demonstrated a sharp understanding of the sentencing guidelines and also persuasively pleaded for the court to place him in a facility that would provide drug treatment and psychiatric care. Antonelli's filings with the court, in which he presented well-formed legal arguments for a downward departure and identified relevant documents and witness testimony that would support his argument, also evidence his ability to understand the proceedings.

On the question of whether Antonelli had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," *Dusky,* 362 U.S. at 402, 80 S.Ct. 788, Antonelli points out that he disagreed with his attorney about an insanity defense. Actually, the court's discussion with Antonelli about a possible insanity defense provides one of the clearest pictures of how well Antonelli could consult with his attorney. In order to determine that there was a sufficient factual basis for the plea, the judge asked the attorneys and Antonelli about a possible insanity defense. Roller responded that he did not think the facts supported an insanity defense. When asked if he agreed with that assessment, Antonelli responded, "No I don't, your Honor. I don't think I was–I think I was out of touch with reality when it happened. I was under the influence of a drug that I didn't know I had taken … But I am willing to waive that. The burden is too hard for me to convince a jury." So, although Antonelli disagreed with his attorney about whether the facts even supported an insanity defense, he was able to ultimately take the advice of his attorney and waive that defense. In addition, Roller had stated earlier that he had been able to have "lucid" conversations with Antonelli and consult with him about the question of his competency. Antonelli also said that he had consulted with Roller about sentencing factors. The fact that Antonelli wanted to proceed to sentencing pro se, with Roller acting only as standby counsel, might be a cause for concern about Antonelli's ability to consult with his attorney, but Antonelli did say that he still had a good rapport with Roller but wanted to litigate the rest of his case himself. At the sentencing hearing Antonelli even agreed to allow Roller to speak on his behalf to request a sentence at the low end of the guideline

range and incarceration in a facility that would provide psychiatric care.

Antonelli places great weight on the fact that his seasoned attorney initially expressed doubt about his competence and was concerned that he filed documents with the court containing "clearly not lucid recitations." Roller's hesitation is certainly important as we have said that the defendant's attorney is in one of the best positions to assess his client's competence. *United States v. Collins*, 949 F.2d 921, 926 (7th Cir.1991). But, Roller's comment was ambiguous and might have been the product of his desire to secure a downward departure based on diminished capacity. After the judge pressed him to comment specifically on the Antonelli's present competence, Roller said that he thought Antonelli was presently competent. Notably, he never suggested that Antonelli had any trouble assisting with his defense. *See United States v. Garrett*, 903 F.2d 1105, 1117 (7th Cir.1990) (quoting *United States v. Vamos*, 797 F.2d 1146 (2d Cir.1986)).

To support his contention that the court should have ordered a competency hearing, Antonelli places much emphasis on *Graves*. In that case, the defendant had "nuttily, rob[bed] one bank over and over again (with no effort at disguise, and with a physical disability that both impairs escape and facilitates identification)." *Graves*, 98 F.3d at 261. The defendant had suffered a stroke a year before the robbery and had no criminal record. *Id.* at 259. He had serious difficulties communicating with the judge at the plea hearing, which his lawyer attributed to the stroke. *Id.* at 261. He also had trouble remembering the crime. *Id.* at 262. We reversed the judgment and remanded the case for a retrospective competency hearing, if it was possible to conduct one. *Id.* Antonelli cites as persuasive that we were concerned about Graves's inability to remember the details of the crime and reminds us that he, too, was unable to remember the details of his crime during the sentencing hearing. But Antonelli did not have trouble remembering his crime because of a present incapacity—he blamed his faulty memory on the fact that he was high on PCP when he committed the bank robbery. Antonelli also cites as persuasive that the district court in *Graves* made its erroneous decision not to hold a competency hearing based entirely on its observation of the defendant at the plea hearing, like the district court in this case. But the *Graves* court did not find error with the fact that the district court relied on the defendant's in-court behavior. Indeed, the court in *Graves* said that it was entirely appropriate to question the defendant and his attorney to determine whether a competency hearing was necessary. *Graves*, 98 F.3d at 261; *see also Grimes*, 173 F.3d at 636 ("informal, on the spot assessment" is appropriate step to determine whether there is reasonable cause for an evidentiary hearing). What caused us to reverse in *Graves* was that all of the defendant's in-court behavior raised a doubt about his competence. *See Graves*, 98 F.3d at 261–62. In sharp contrast, Antonelli's in-court behavior did not give the district court reasonable cause to believe he was incompetent.

Because Antonelli's in-court behavior and pro se filings did not create a reasonable cause to doubt his competence, we AFFIRM the judgment of the district court.