**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 27, 2011
Decided July 7, 2011

*Before*

RICHARD D. CUDAHY, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

Nos. 10-2143 & 10-2537

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeals from the United States District Court for the Western District of Wisconsin. |
| *v.* | Nos. 10-CR-20-C-01 & 10-CR-47-BBC-01 |
| RICHARD MOLINARO and THOMAS A. SENGE, *Defendants-Appellants.* | Barbara B. Crabb, *Judge.* |

**O R D E R**

Richard Molinaro and Thomas Senge entered a bank in Union Center, Wisconsin, wearing masks and hooded sweatshirts. Senge pressed a gun to the head of one employee and ordered her to fill a bag with cash while Molinaro guarded a second employee. Senge then forced the workers into a bathroom and wedged the door closed with a chair. The pair fled with $45,202, but were caught and prosecuted in federal court. Both men now appeal from prison terms they received after pleading guilty to armed bank robbery, 18 U.S.C. § 2113(a), (d), and, in Senge's case, to using a gun during the robbery, *id.* § 924(c)(1)(A)(ii). Molinaro contends that the district court erred by (1) characterizing his Wisconsin conviction for vehicular fleeing as a crime of violence in applying the career-offender guideline, and (2) overlooking his argument that his cooperation warranted a below-

guidelines sentence. We reject both arguments and uphold Molinaro's sentence. Senge's newly appointed appellate lawyer has moved to withdraw under *Anders v. California*, 386 U.S. 738 (1967). We grant that motion and dismiss Senge's appeal.

We start with Molinaro, who avoided prosecution under § 924(c) by agreeing to cooperate with the government. As part of the written plea agreement, the government also agreed to recommend a 3-level reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. A probation officer concluded that Molinaro is a career offender, *see id.* § 4B1.1, in light of his Wisconsin convictions for burglary of a dwelling, WIS. STAT. § 943.10(1m)(a), and vehicular fleeing, *id.* § 346.04(3). That designation, after the reduction for acceptance of responsibility, yielded a total offense level of 31, a Category VI criminal history, and a guidelines imprisonment range of 188 to 235 months. Molinaro objected to the probation officer's conclusion that his conviction for vehicular fleeing is a crime of violence, and also asserted that he should receive a downward adjustment for what he described as his "minor" role in the offense, *see* U.S.S.G. § 3B1.2. At sentencing the district court overruled both objections and adopted the probation officer's calculations.

The government asked for a sentence at the high end of the guidelines range. Although acknowledging that Molinaro's cooperation influenced Senge to plead guilty, the prosecutor asserted that Molinaro had cooperated as "part of an arms-length negotiation" and only because the government promised not to charge him under § 924(c). The prosecutor insisted that Molinaro should not be sentenced below the guidelines range because he already had received the "benefit for his cooperation in this matter."

Molinaro in turn asked for a sentence of 10 years to run concurrently with an undischarged state sentence. Counsel asserted that Molinaro was less culpable than Senge, and argued that, although the district court had declined to find that Molinaro was a minor participant, the court still should take into account that Senge had done "violent things" to the bank employees while Molinaro "simply stood there and took orders." Counsel also argued that Molinaro had only two convictions for crimes of violence, both over a decade old, and that he was a "changed man." Counsel further asserted that Molinaro's cooperation with the government supported a below-guidelines sentence. The government had not filed a motion under U.S.S.G. § 5K1.1, but defense counsel insisted that Molinaro's cooperation warranted a reduction under that guideline because he had given a "complete and truthful statement" to investigators and testified before a grand jury about Senge's involvement in the robbery.

After discussing the bank robbery as well as Molinaro's personal history and prior convictions, the district court imposed a term of 204 months to run consecutively to the undischarged state imprisonment. This sentence, the court explained, was "no greater than

necessary" to hold Molinaro accountable, rehabilitate him, protect the community, and achieve parity with the sentences of similarly situated offenders. The court did not mention Molinaro's cooperation.

On appeal Molinaro first argues that the district court erred in concluding that his Wisconsin conviction for vehicular fleeing, *see* WIS. STAT. § 346.04(3), is a crime of violence for purposes of the career-offender guideline. We have held that a conviction under § 346.04(3) does qualify, *United States v. Dismuke*, 593 F.3d 582, 596 (7th Cir. 2010), *petition for cert. filed*, 79 U.S.L.W. 3062 (U.S. July 19, 2010) (No. 10-109), but Molinaro contends that *Dismuke* was wrongly decided. He raises the issue only to preserve it for review in the Supreme Court, which recently upheld our conclusion that a conviction under a similar Indiana statute punishing the use of a vehicle to flee from the police, *see* IND. CODE § 35–44–3–3(b)(1)(A) (2004), is a crime of violence. *See United States v. Sykes*, 598 F.3d 334 (7th Cir. 2010), *aff'd*, *Sykes v. United States*, No. 09–11311, 2011 WL 2224437 (U.S. June 9, 2011).

Molinaro's main contention, however, is that the district court erred by not commenting on his argument that a sentence below the guidelines range was warranted by his cooperation. A sentencing judge "must adequately explain the chosen sentence to allow for meaningful appellate review," *Gall v. United States*, 552 U.S. 38, 50 (2007), and a judge "who fails to mention a ground of recognized legal merit (provided it has a factual basis) is likely to have committed an error or oversight," *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005). Yet in this instance the district judge was not required to discuss Molinaro's cooperation.

In reaching this conclusion, we reject the government's contention that Molinaro's cooperation was not a "principal" argument in mitigation. A sentencing judge is not obligated to address "every pithy argument that a defendant raises, just the 'principal' ones," *United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009), and, according to the government, Molinaro's cooperation was not principal because he made several arguments in mitigation yet "failed to distinguish the cooperation argument as being of primary importance." As the government concedes, however, defense counsel spoke at length about Molinaro's cooperation relative to the § 5K1.1 factors and explained that, under *United States v. Knox*, 573 F.3d 441, 453 (7th Cir. 2009), a sentencing court may consider a defendant's cooperation as a basis for a reduced sentence without a government motion. This degree of discussion made his cooperation a principal argument in mitigation. *Compare United States v. Arberry*, 612 F.3d 898, 900 (7th Cir. 2010) (explaining that argument was "principal" since it was raised at sentencing and rested on solid legal support), *with United States v. Olmeda-Garcia*, 613 F.3d 721, 723 (7th Cir. 2010) (noting that argument was not "principal" because it was not adequately developed).

That said, we still conclude that the district court was free to reject Molinaro's argument without comment. Stock arguments—even principal arguments—may be rejected with little or no explanation, *see United States v. Gary*, 613 F.3d 706, 709-11 (7th Cir. 2010); *United States v. Poetz*, 582 F.3d 835, 838-39 (7th Cir. 2009), and we have characterized as "routine" claims that substantial assistance to the government warrants leniency, *see United States v. Gonzalez*, 462 F.3d 754, 755-56 (7th Cir. 2010). In this instance, moreover, the totality of the record convinces us that the district court necessarily evaluated Molinaro's cooperation. *See Poetz*, 582 F.3d at 839; *United States v. Carrillo-Esparza*, 590 F.3d 538, 540 (7th Cir. 2010). The plea agreement makes explicit that in exchange for Molinaro's cooperation the government did not pursue a mandatory, consecutive term of imprisonment under § 924(c), and the district court expressly accepted that agreement at the sentencing hearing. To require the district court to repeat what already had been vetted fully would serve no purpose.

We now turn to Senge, who has not responded to counsel's *Anders* submission. CIR. R. 51(b). The probation officer concluded that Senge, like Molinaro, is a career offender because of a 1985 Pennsylvania conviction for robbery, PA. CONS. STAT. § 3701, and a 1991 Wisconsin conviction for attempted armed robbery, WIS. STAT. §§ 943.32(1)(b), (2), 939.32. Accounting for acceptance of responsibility and the 25-year statutory maximum prison term, *see* 18 U.S.C. § 2113(d), the probation officer concluded that for the bank robbery Senge's total offense of 31 and Category VI criminal history yielded a guidelines imprisonment range of 188 to 235 months. Because Senge's conviction on the § 924(c) count carried a mandatory consecutive term of at least 7 years, *see id.* § 924(c)(1)(A)(ii), the probation officer added that penalty to the range for the bank robbery and determined that, under § 4B1.1(c)(3), Senge's overall range was 262 to 327 months, U.S.S.G. §§ 2K2.4(c), 4B1.1(c)(2). Senge objected to counting his 1985 Pennsylvania conviction, claiming that his sentence for that conviction had been fully discharged more than 15 years before the crimes at issue here. The district court overruled this objection and adopted the probation officer's calculations. After discussing the § 3553(a) factors, the court imposed a term of 264 months to run consecutively to an undischarged state sentence.

Senge wants his guilty pleas set aside, so appellate counsel begins by discussing potential arguments about the adequacy of the plea colloquy and the voluntariness of the pleas. *See* FED. R. CRIM. P. 11; *United States v. Knox*, 287 F.3d 667, 671-72 (7th Cir. 2008). We would review these arguments for plain error because Senge did not move to withdraw his guilty pleas in the district court. *See* FED. R. CRIM. P. 52(b); *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009); *United States v. Anderson*, 604 F.3d 997, 1001 (7th Cir. 2010). Counsel considers arguing that the district court violated Rule 11 by not telling Senge that he could be prosecuted for perjury if he lied under oath during the plea colloquy, or that he had a right to maintain his pleas of not guilty. FED. R. CRIM. P. 11(b)(1)(A), (B). But we agree with

counsel that it would be frivolous to rest an appellate claim on either omission, since there is no current or prospective prosecution against Senge for perjury, *see United States v. Blalock*, 321 F.3d 686, 689 (7th Cir. 2003); *United States v. Graves*, 98 F.3d 258, 259 (7th Cir. 1996), and he knew from his written plea agreement that he did not have to change his pleas to guilty, *see United States v. Driver*, 242 F.3d 767, 771 (7th Cir. 2001). In addition, counsel notes that the district court did not tell Senge that the prison sentence for the gun count was required to run consecutively to his sentence for the bank robbery, *see* 18 U.S.C. § 924(c)(1)(D)(ii), but Rule 11 "does not require a district court to inform the defendant of mandatory consecutive sentencing," *United States v. General*, 278 F.3d 389, 395 (4th Cir. 2002); *see United States v. Burney*, 75 F.3d 442, 445 (8th Cir. 1996); *United States v. Ospina*, 18 F.3d 1332, 1334 (6th Cir. 1994); *Paradiso v. United States*, 482 F.2d 409, 415 (3d Cir. 1973).

Counsel advises that Senge would like to contend on appeal that his guilty pleas were induced by a lack of the insulin he needs for his diabetes, and that his lawyer in the district court failed to appreciate his medical condition and pressured him to plead guilty. These attacks on his guilty pleas would be premature because the evidence necessary to sustain them is not in the record. Indeed, as the record now stands, Senge's premise is *contradicted* by his statements during the plea colloquy. The use of medication (or its absence when needed) can affect a defendant's mental state to the point of vitiating a guilty plea, *see Burt v. Uchtman*, 422 F.3d 557, 564, 566 (7th Cir. 2005); *United States v. Savinon-Acosta*, 232 F.3d 265, 268 (1st Cir. 2000); *United States v. Damon*, 191 F.3d 561, 564-66 (4th Cir. 1999); *Miles v. Stainer*, 108 F.3d 1109, 1112-13 (9th Cir. 1997), but here the district court asked Senge whether "being on medication" might interfere with his ability to understand the proceedings, and he answered no. The court properly relied on Senge's own assurance of mental clarity, *Savinon-Acosta*, 232 F.3d at 269; *Miranda-Gonzalez v. United States*, 181 F.3d 164, 166 (1st Cir. 1999); *United States v. Vaughan*, 13 F.3d 1186, 1187 (8th Cir. 1994), and Senge's performance during the colloquy confirmed his lucidity, *see United States v. Walker*, 447 F.3d 999, 1004-05 (7th Cir. 2006); *Chichakly v. United States*, 926 F.2d 624, 634-35 (7th Cir. 1991); *Savinon-Acosta*, 232 F.3d at 269; *United States v. Lessner*, 498 F.3d 185, 196 (3d Cir. 2007). Moreover, the representations Senge made to the district court under oath are presumed truthful, *United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008); *United States v. Weathington*, 507 F.3d 1068, 1072 (7th Cir. 2007), and if he later asserts that he lied during the colloquy, the district court will be free to reject out of hand the claim of perjury, *see United States v. Standiford*, 148 F.3d 864, 868-69 (7th Cir. 1998); *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995).

Counsel has also evaluated whether Senge could argue that the district court erred in counting his 1985 robbery conviction (for which he received an indeterminate sentence of 5 to 10 years) as a predicate offense for purposes of § 4B1.1. We agree that this argument would be frivolous. Despite Senge's objection that he finished serving that sentence more than 15 years before committing the crimes at issue here, the probation officer confirmed

that Senge had been returned to prison in 2006 and did not fully discharge his robbery sentence until 2008, within the countable 15-year period. *See* U.S.S.G. § 4A1.2(e)(1), (k)(2); *United States v. Moreno-Padilla*, 602 F.3d 802, 807-08 (7th Cir. 2010). Senge introduced no evidence at sentencing to support his contention that the Pennsylvania records relied upon by the probation officer are inaccurate. Counsel tells us that Senge now asserts that his reimprisonment in 2006 was prompted by a probation violation arising from a 1974 conviction for burglary, not due to the 1985 conviction, but nothing in the record supports that contention.

Counsel further alerts us that the district court miscalculated Senge's imprisonment range. The court noted that under § 4B1.1(c) Senge's range was the "greater" of (1) the career-offender range of 188 to 235 months for the bank robbery plus 7 years (272 to 319 months) or (2) the range determined under § 4B1.1(c)(3) (262 to 327 months). The court concluded that the latter was the "greater" range because it carried the highest advisory prison term, but in fact the court should have selected the range with the highest *minimum* prison term—272 to 319 months. *See* U.S.S.G. § 4B1.1 cmt. n.3(B). The sentencing court thus committed error, but counsel correctly reasons that an appellate argument would be frivolous because the error favored Senge. We also agree with counsel's assessment that Senge would have no argument about the reasonableness of his prison sentence. The term of 264 months is below the correctly calculated range of 272 to 319 months, and, like a sentence within the guidelines range, a term below the range is presumed reasonable. *Poetz*, 582 F.3d at 837. We are given no reason to disregard that presumption.

That leaves one final matter. As counsel recognizes, the district court erroneously sentenced Senge to a single 264-month prison term instead of specifying that he was sentenced to 180 months for the bank robbery plus a consecutive term of 84 months (the statutory minimum) for the § 924(c) count. *See* U.S.S.G. § 5G1.2(e) & cmt. n3(B); *United States v. Ward*, 626 F.3d 179, 184 (3d Cir. 2010); *United States v. Thompson*, 454 F.3d 459, 468 (5th Cir. 2006); *United States v. Moriarty*, 429 F.3d 1012, 1025 (11th Cir. 2005); *United States v. Cummings*, 395 F.3d 392, 400 (7th Cir. 2005); *United States v. Woodard*, 938 F.2d 1255, 1257 (11th Cir. 1991). Counsel has assessed whether to seek correction of this error on appeal but reasons that an appellate claim would be frivolous because the aggregate sentence of 264 months does not exceed the statutory maximum for either count of conviction, and counsel cannot discern any way that Senge has been prejudiced.

Nor do we. Our review would be for harmless error because Senge did not have an opportunity to object to the error at sentencing. *See* FED. R. CRIM. P. 51(b); *United States v. Snyder*, 635 F.3d 956, 962 (7th Cir. 2011); *United States v. Martinez-Barragan*, 545 F.3d 894, 899 (10th Cir. 2008). An error is harmless only if the government can prove that it did not affect the defendant's substantial rights. *United States v. Zahursky*, 580 F.3d 515, 527 (7th Cir. 2009).

Having reviewed an array of Program Statements governing a wide range of postconviction procedures and conditions administered by the Bureau of Prisons, we have seen no indication that the district court's erroneous assignment of an aggregate sentence will have any practical consequence that would affect Senge's substantial rights while incarcerated. *See generally* U.S. Dept. of Justice, Federal Bureau of Prisons, Program Statements Series 1000—*General Administration and Management*; Series 4000—*Support Services and Logistics*; Series 5000—*Inmate and Custody Management*; Series 6000—*Medical, Dental, and Health*, *available at* http://www.bop.gov/DataSource/execute/dsPolicyLoc (last visited June 8, 2011). We thus agree with counsel that an appellate claim would be frivolous.

The judgment in Molinaro's appeal is **AFFIRMED**. The motion to withdraw filed by counsel for Senge is **GRANTED**, and his appeal is **DISMISSED**.